## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DENISE KELLY,

       Plaintiff,

    v.

SAP AMERICA, INC., SAP AG, and
CIGNA HEALTHCARE,

       Defendants.

Civil Action No. 02-CV-2955

## ORDER

AND NOW, this _____ day of _____ 2002, it is hereby ORDERED that

Defendants' Motion to Dismiss All Counts (Counts A – K) of Plaintiff's Amended Complaint is

GRANTED.

BY THE COURT:

_____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DENISE KELLY,

        Plaintiff,

    v.

SAP AMERICA, INC., SAP AG, and
CIGNA HEALTHCARE,

        Defendants.

Civil Action No. 02-CV-2955

## MOTION TO DISMISS ALL COUNTS (COUNTS A-K)
## OF PLAINTIFF'S AMENDED COMPLAINT OF
## DEFENDANTS SAP AMERICA, INC. AND CIGNA HEALTHCARE

Defendants SAP America, Inc. ("SAP America") and CIGNA Healthcare ("CIGNA")

(collectively, "Defendants"), by and through their attorneys, hereby move pursuant to Fed. R.

Civ. P. 12(b)(6) to dismiss all Counts (A-K) of the Amended Complaint of Plaintiff Denise Kelly

("Ms. Kelly"). In support of their Motion, Defendants state as follows:

    1.    Ms. Kelly is a former employee of SAP America. On March 23, 2001, SAP

America terminated Ms. Kelly's employment for sending an inappropriate e-mail to Wolfgang

Kemna, the Chief Executive Officer of SAP America. On December 3, 2001, Ms. Kelly dual-

filed a Charge of Discrimination with the Equal Employment Opportunity Commission

("EEOC") and the Pennsylvania Human Relations Commission, alleging age and disability

discrimination against SAP America. On March 7, 2002, the EEOC issued a Dismissal and

Notice of Rights ("Right to Sue Notice"). Despite receiving her Right to Sue Notice, Ms. Kelly

did not proceed directly to file a complaint. Instead, on May 17, 2002, she filed a motion for

leave to proceed *in forma pauperis* ("IFP Motion"), which this Court denied effective May 30,

2002. Then, on July 15, 2002, 130 days after the EEOC issued the Notice of Right to Sue, Ms. Kelly filed her Complaint in this action. Unfortunately for Ms. Kelly, even if this Court assumes each and every allegation contained in the Amended Complaint is true, Ms. Kelly has failed to state a single viable claim under Pennsylvania law.

2.      Counts B, C and G, which purport to state federal age, sex and disability discrimination claims, are all time-barred. As noted above, even allowing for equitable tolling while this Court considered Ms. Kelly's IFP Motion, Ms. Kelly did not file this action within 90 days of receipt of her Notice of Right To Sue from the EEOC. In addition, Count C, alleging sex discrimination claim, is subject to dismissal for failure to exhaust administrative remedies. Ms. Kelly never asserted or even hinted at a claim of sex discrimination in her EEOC Charge.

3.      Count F under the Family and Medical Leave Act ("FMLA") and "common law doctrine of respondent [sic] superior" is subject to dismissal because Ms. Kelly expressly alleges in the Amended Complaint that she received FMLA protections and that her own misconduct resulted in her termination.

4.      This Court should dismiss Count I under the Consolidated Omnibus Budget Reconciliation Act ("COBRA") and the Health Insurance Portability and Accountability Act ("HIPAA"), because even assuming that the Amended Complaint's allegations are true, they do not state a valid claim under either statute. Indeed, HIPAA does not even provide for a private right of action.

5.      Counts A and E, Ms. Kelly's defamation claims of "blackballing" and libel, are both time-barred because Ms. Kelly did not file this action within Pennsylvania's one-year statute of limitations.

6.      Counts D, H, J, and K, Plaintiff's "whistleblowing and gross negligence," breach of implied contract, "malice and collusion" and "gross disrespect" claims, are subject to dismissal because Pennsylvania law simply does not recognize such causes of action in the employment at-will context.

WHEREFORE, for all the foregoing reasons and those contained in the accompanying Memorandum of Law, this Court should grant Defendants' Motion to Dismiss All Counts (A – K) of Plaintiff's Amended Complaint and issue an order dismissing the Amended Complaint in its entirety and with prejudice.

Respectfully submitted,

James N. Boudreau (Id. No. 77891)
Tamsin J. Newman (Id. No. 81001)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA  19103

Attorneys for Defendants SAP America, Inc.
and CIGNA Healthcare

## CERTIFICATE OF SERVICE

I, Tamsin J. Newman, hereby certify that a true and correct copy of the foregoing

Motion To Dismiss All Counts (Counts A – K) Of Plaintiff's Amended Complaint Of

Defendants SAP America, Inc. And CIGNA Healthcare, and memorandum of law in support

thereof, was served by first class mail this 11th day of September, 2002, upon the following:

Ms. Denise Kelly
15 North Elm Avenue
Newtown, PA 18940

TAMSIN J. NEWMAN

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DENISE KELLY,

      Ms. Kelly,

    v.

SAP AMERICA, INC., SAP AG, and
CIGNA HEALTHCARE,

      Defendants.

Civil Action No. 02-CV-2955

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS ALL COUNTS (COUNTS A – K)
## OF PLAINTIFF'S AMENDED COMPLAINT

James N. Boudreau (Id. No. 77891)
Tamsin J. Newman (Id. No. 81001)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA  19103

Attorneys for Defendants SAP America, Inc.
and CIGNA Healthcare

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF PLAINTIFF'S ALLEGATIONS .................................... 2

III.    ARGUMENT ...................................................................................................... 3

      A.      The Standard Under Rule 12(b)(6) .................................................. 3

      B.      This Court Should Dismiss Ms. Kelly's Federal Discrimination Claims
           Against SAP America (Counts B, C And G) ................................... 4

      C.      In Addition To Being Time-Barred, Ms. Kelly's Sexual Harassment Claim
           Against SAP America (Count C) Also Fails Because She Did Not Exhaust
           Her Administrative Remedies. ........................................................... 6

      D.      Ms. Kelly's FMLA Claim Against SAP America And CIGNA (Count F)
           Fails Because She Admits On The Face Of Her Amended Complaint That
           She Received FMLA Protections And That Her Termination Was Based
           Upon Her Misconduct. ........................................................................ 8

      E.      This Court Should Dismiss Ms. Kelly's Claim Against SAP America And
           CIGNA Under COBRA And HIPAA (Count I). ......................... 10

      F.      Ms. Kelly's "Blackballing" And Libel Claims Against SAP America
           (Counts A and E) Are Time-Barred. ............................................ 12

      G.      Ms. Kelly's "Whistleblowing And Gross Negligence" Claim Against SAP
           America (Count D) Fails To State A Valid Claim For Relief. ........... 13

      H.      Ms. Kelly's Breach Of Implied Contract Claim Against SAP America
           (Count H) Fails As A Matter Of Law. ........................................... 16

      I.      Ms. Kelly's Claims Of "Malice And Collusion" And "Gross Disrespect"
           (Counts J And K) Against SAP America and CIGNA Do Not State Claims
           Cognizable Under Pennsylvania Law. .......................................... 18

IV.     CONCLUSION .................................................................................................. 19

# TABLE OF AUTHORITIES

## FEDERAL RULES AND STATUTES

Fed. R. Civ. P. 12 ................................................................................................2, 3, 10

Age Discrimination In Employment Act,
    29 U.S.C. §§ 621 *et seq.* ................................................................................4

Americans With Disabilities Act of 1990,
    42 U.S.C. §§ 12101 *et seq.* ............................................................................4

Consolidated Omnibus Budget Reconciliation Act,
    29 U.S.C. §§ 1161 *et seq.,* .............................................................. 1, 10-12

Employee Retirement Security Income Act,
    29 U.S.C. §§ 1001 *et seq.* ............................................................................11

Family and Medical Leave Act,
    29 U.S.C. §§ 2601 *et seq.* ...................................................................... 1, 8-10

Health Insurance Portability and Accountability Act,
    42 U.S.C. §§ 300gg *et seq.* ...................................................................... 1, 10-12

Title VII of the Civil Rights Act of 1964,
    42 U.S.C. § 2000e *et seq.* ..........................................................................4, 6

## STATE STATUTES

42 P.S. § 5523 ................................................................................................12

Pennsylvania Whistleblower law,
    43 P.S. §§1421 *et seq.* ..............................................................................13, 14

## FEDERAL CASES

*Alifano v. Merck & Co., Inc.,*
    175 F.Supp. 2d 792 (E.D. Pa. 2001) ..........................................................9

*Anderson v. Haverford College,*
    851 F. Supp. 179 (E.D. Pa. 1994) ..........................................................17, 18

*Andrews v. Time, Inc.,*
    690 F. Supp. 362 (E.D. Pa. 1988) ..........................................................13

*Antol v. Perry,*
    82 F.3d 1291 (3d Cir. 1996) ..........................................................6, 7

*Brock v. Provident Am. Ins. Co.,*
   144 F. Supp.2d 652 (N.D. Tex. 2001) ........................................................11

*Burgh v. Borough Council of Montrose,*
   251 F.3d 465 (3d Cir. 2001) .....................................................................8

*Calkins v. Dollarland, Inc.,*
   117 F. Supp.2d 421 (D. N.J. 2000) .........................................................10

*Chatterjee v. School Dist. of Philadelphia,*
   170 F. Supp.2d 509, 518 (E.D. Pa. 2001) ...............................................11

*Chisholm v. Nat'l Corp. for Hous. Partnerships,*
   No. Civ. A. 99-3602, 2000 WL 307245 (E.D. Pa. Mar. 22, 2000)........................15, 16

*Churchill v. Star Enterprises,*
   183 F.3d 184 (3d Cir. 1999) .....................................................................4

*Clark v. Modern Group Ltd.,*
   9 F.3d 321 (3d Cir. 1993) .......................................................................14

*Clarkson v. Pennsylvania State Police,*
   No. Civ. A 99783, 2000 WL 1513773 (E.D. Pa. Oct. 10, 2000) ...................................7

*Cooper v. Thomson Newspapers,*
   6 F. Supp.2d 109, 114 (D. N.H. 1998) ...................................................9, 10

*Douris v. County of Bucks,*
   No. Civ. A. 99-3357, 2001 WL 767579 (E.D. Pa. July 3, 2001) ...................................8

*Fry v. First Fidelity Bancorporation,*
   No. 95-6019, 1996 WL 36910 (E.D. Pa. Jan. 30, 1996).........................................9

*Hishon v. King & Spalding,*
   467 U.S. 69 (1984) ..................................................................................4

*Howze v. Jones & Laughlin Steel Corp.,*
   750 F.2d 1208 (3d Cir. 1984) ...................................................................7

*Irwin v. Department of Veterans Affairs,*
   498 U.S. 89 (1990) ..................................................................................4

*Johnson v. Resources for Human Development, Inc.,*
   843 F. Supp. 974 (E.D. Pa. 1994) .......................................................14, 16

*McCray v. Corry Manufacturing,*
   61 F.3d 224 (3d Cir. 1995) .......................................................................4

*Means v. Independent Life and Accident Insurance Co.*,
  963 F. Supp. 1131 (M.D. Ala. 1997) ........................................................... 11

*Mercante v. Preston Trucking Co.*,
  No. 96-5904, 1997 WL 288614 (E.D. Pa. May 21, 1997) .......................................... 16

*Merv Swing Agency, Inc. v. Graham Co.*,
  579 F. Supp. 429 (E.D. Pa. 1983) ............................................................... 13

*Miller-Turner v. Mellon Bank*,
  No. 94-5409, 1995 WL 298931 (E.D. Pa. May 16, 1995),
  *aff'd*, 91 F.3d 124 (3d Cir. 1996) ............................................................... 8

*Mosel v. Hills Department Store, Inc.*,
  789 F.2d 251 (3d Cir. 1986) ................................................................ 4, 5, 6

*Northeast Jet Ctr., Ltd. v. Lehigh-Northampton Airport Authority*,
  767 F. Supp. 672 (E.D. Pa. 1991) ............................................................... 10

*O'Donnell v. Blue Cross Blue Shield of Wyoming*,
  173 F. Supp.2d 1176 (D. Wyo. 2001) ............................................................ 11

*Oshiver v. Levin, Fishbein, Sedran & Berman*,
  38 F.3d 1380 (3d Cir. 1994). ............................................................... 2, 3, 18

*Ostapowicz v. Johnson Bronze Co.*,
  541 F.2d 394 (3d Cir. 1976), *cert. denied*, 429 U.S. 1041 (1977) ............................... 6

*Parsons v. City of Philadelphia Coordinating Office of Drug and Abuse Programs*,
  822 F. Supp. 1181 (E.D. Pa. 1993) .............................................................. 7

*Peek v. Philadelphia Coca-Cola Bottling Co.*,
  No. 97-3372, 1997 WL 399379 (E.D. Pa. July 16, 1997) ......................................... 10

*Pino v. Wyeth-Ayerst/AHPC*,
  Nos. 95-3180, 95-4008, 1995 WL 708551 (E.D. Pa. Nov. 29, 1995) ........................... 5, 6

*Raines v. Haverford College*,
  849 F. Supp. 1009 (E.D. Pa. 1994) .......................................................... 17, 18

*Rembert v. Allstate Insurance Co.*,
  No. 00-848, 2000 WL 1717245 (E.D. Pa. Nov. 15, 2000) ........................................ 17

*Richardson v. Diagnostic Rehabilitation Ctr.*,
  836 F. Supp. 252 (E.D. Pa. 1993) ............................................................... 5

*Rotto v. Haskells of Pittsburgh, Inc.*,
  No. 96-360, 1997 WL 689437 (E.D. Pa. 1997) ................................................. 11, 12

*Scary v. Philadelphia Gas Works,*
   202 F.R.D. 148 (E.D. Pa. 2001) ............................................................5

*Schoch v. First Fidelity Bancorporation,*
   912 F.2d 654 (3d Cir. 1990) .........................................................14, 16

*Schouten v CSX. Transp., Inc.,*
   58 F. Supp.2d 614 (E.D. Pa. 1999). ......................................................8

*Schrob v. Catterson,*
   948 F.2d 1402 (3d Cir. 1991) ...............................................................3

*Seitzinger v. Reading Hospital & Med. Ctr.,*
   165 F.3d 236 (3d Cir. 1999) .................................................................5

*Smythe v. Pillsbury Co.,*
   914 F. Supp. 97 (E. D. Pa. 1996) ........................................................15

*Voorhees v. Time Warner Cable Natl Div.,*
   No. 98-1460, 1999 WL 673062 (E.D. Pa. Aug. 30, 1999) ....................5

*Woods v. Bentsen,*
   889 F. Supp. 179 (E.D. Pa. 1995) .........................................................5

*Wright v. Combined Insurance Co. of Am.,*
   959 F. Supp. 356 (N.D. Miss. 1997) ...................................................11

*Zerebnick v. Beckwith Machine Co.,*
   No. 95-0008, 1996 WL 233763 (W.D. Pa. Mar. 7, 1996) ....................7

## STATE CASES

*Abernethy v. Williams,*
   584 A.2d 1085 (Pa. Cmwlth. 1990), *appeal denied*, 602 A.2d 861 (Pa. 1992) ..........12

*DiBonaventura v. Consolidated Rail Corp.,*
   539 A.2d 865 (Pa. Super. 1988) .........................................................16

*Field v. Philadelphia Electric Co.,*
   565 A.2d 1170 (Pa. Super. 1989) .......................................................15

*Geary v. United States Steel Corp.,*
   319 A.2d 174 (Pa. 1974) ..............................................................14, 16

*Highhouse v. Avery Transportation,*
   660 A.2d 1374 (Pa. Super. 1995) .......................................................15

*Jacques v. Akzo International Salt, Inc.*,
   619 A.2d 748 (Pa. Super. 1993) ........................................................................ 17, 18

*Kroen v. Bedway Security Agency*,
   633 A.2d 628 (Pa. Super. 1993) ...............................................................................15

*Luteran v. Loral Fairchild Corp.*,
   688 A.2d 211 (Pa. Super.), *appeal denied*, 701 A.2d 578 (Pa. 1997) ................... 16-18

*Nix v. Temple University*,
   596 A.2d 1132 (Pa. Super. 1991), ........................................................................ 14, 16

*Reuther v. Fowler & Williams, Inc.*,
   386 A.2d 119 (Pa. Super. 1978) ...............................................................................15

*Shick v. Shirey*,
   716 A.2d 1231 (Pa. 1998) ...............................................................................14, 15, 16

*Spain v. Vicente*,
   461 A.2d 833 (Pa. Super. 1983) ...............................................................................12

## I.    __INTRODUCTION__

This action arises out of Plaintiff Denise Kelly's ("Ms. Kelly") employment with Defendant SAP America, Inc. ("SAP America") and the termination of that employment relationship on March 23, 2001. On July 15, 2002, Ms. Kelly – who is proceeding *pro se* – filed a Complaint against SAP America, SAP AG and CIGNA Healthcare ("CIGNA"). She did not serve the Complaint upon SAP America, SAP AG or CIGNA. Instead, she served SAP America and CIGNA ("Defendants")[1/] with a Complaint containing the heading "AMENDED 7/15/02" ("Amended Complaint"), which appears to be virtually identical to the Complaint filed with the Court. A copy of the Amended Complaint is attached hereto as Exhibit A.

The Amended Complaint contains seven (7) single-spaced pages of exceedingly detailed allegations that purport to assert eleven (11) separate causes of action against either or both Defendants. Ms. Kelly's claims can be categorized as follows: federal claims of age, sex and disability discrimination against SAP America (Counts B, C and G); a claim under the Family and Medical Leave Act ("FMLA") and "the common law doctrine of Respondent [sic] Superior" against SAP America and CIGNA (Count F); a claim under the Consolidated Omnibus Budget Reconciliation Act ("COBRA") and the Health Insurance Portability and Accountability Act ("HIPAA") against SAP America and CIGNA (Count I); defamation claims of "blackballing" and libel against SAP America (Counts A and E); a claim of whistleblowing and "gross negligence against SAP America and SAP AG (Count D); a breach of implied contract claim against SAP America and SAP AG (Count H); and claims of "malice and collusion" and "gross disrespect" against SAP America and CIGNA (Counts J and K).

---

[1/]    Plaintiff has not effected service upon SAP AG.

As set forth more fully below, the length and detail of Ms. Kelly's Amended Complaint simply does not make up for its legal deficiencies. Each of Ms. Kelly's claims is either time-barred or fails to state a valid claim for relief. Accordingly, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants move to dismiss the Amended Complaint in its entirety and with prejudice.

## II.    STATEMENT OF PLAINTIFF'S ALLEGATIONS

For purposes of this Motion only, Defendants accept as true the following facts alleged in the Amended Complaint. On June 30, 1997, SAP America hired Ms. Kelly. Am. Compl. ¶ II.H. On or about February 15, 2001, Ms. Kelly requested, and SAP America granted, a leave of absence pursuant to the FMLA for depression. *Id.* ¶ II.F. While on leave, Ms. Kelly continued to have access to the Company's e-mail system. *Id.*

Shortly after Ms. Kelly began her leave of absence, Wolfgang Kemna, the CEO of SAP America, sent an e-mail to all SAP America employees asking employees to respond to an online Company survey. *Id.* Instead of accessing the survey online, Ms. Kelly two e-mails directly to Mr. Kemna, the CEO. *Id.* ¶ II.D. The first e-mail contained the subject heading, "an employee is nothing more than a used condom," and the text stated: "They are great when they work but what a bitch when they break. . . . This company keeps a soldier in combat until their [sic] dead." In the second e-mail, sent later the same day, Ms. Kelly admitted to sending the first e-mail and attempted to explain her misconduct.[2]

---

[2]    Since Ms. Kelly refers to her two e-mails in her Amended Complaint, Compl. ¶ II.D, the Court may consider them on a motion to dismiss. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994).

On March 23, 2001, Lawrence Kleinman, Senior Vice President, notified Ms. Kelly by letter that SAP America was terminating her employment for insubordination and gross disrespect based upon one of the e-mails she had sent to the CEO. *Id.* ¶ II.E.

On December 3, 2001, Ms. Kelly dual-filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") against SAP America, alleging that SAP America discriminated against her on the basis of age and disability. *See* Charge of Discrimination (attached hereto as Ex. B).

On March 7, 2002, the EEOC issued a Dismissal and Notice of Rights ("Right to Sue Notice"). The Right to Sue Notice expressly informed Ms. Kelly that she must file any lawsuit based on the Charge within 90 days of receipt of the Notice. *See* Dismissal and Notice of Rights (attached hereto as Ex. C).

On May 17, 2002, Ms. Kelly filed a motion for leave to proceed *in forma pauperis* ("IFP Motion"), which this Court denied effective May 30, 2002. *See* Certified Civil Docket (attached hereto as Ex. D). On July 15, 2002, 130 days after she received her Notice of Right to Sue, Ms. Kelly filed a Complaint against SAP America, SAP AG, and CIGNA Healthcare. *Id.* Ms. Kelly served her Amended Complaint upon CIGNA on August 22, 2002, and upon SAP America on September 5, 2002.

### III.    ARGUMENT

#### A.    The Standard Under Rule 12(b)(6)

In ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), this Court must accept the Amended Complaint's allegations as true and view them in the light most favorable to Ms. Kelly. *Schrob v. Catterson*, 948 F.2d 1402, 1405 (3d Cir. 1991). If, after doing so, it appears that Ms. Kelly can prove no set of facts that would entitle her to relief, the Court should

3

dismiss the Amended Complaint. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). As set forth below, even assuming the Amended Complaint's allegations are true, each Count of Ms. Kelly's Amended Complaint fails as a matter of law. As a result, this Court should dismiss the Amended Complaint in its entirety.

**B.    This Court Should Dismiss Ms. Kelly's Federal Discrimination Claims Against SAP America (Counts B, C And G).**

In paragraphs II.B, II.C and II.G of the Amended Complaint, Ms. Kelly purports to assert claims of age, sex and disability discrimination against SAP America under the Age Discrimination In Employment Act, 29 U.S.C. §§ 621 *et seq.* ("ADEA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Americans With Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* ("ADA"). These claims all fail as a matter of law because they are time-barred.

Title VII provides a complainant with 90 days after receipt of a notice of right to sue to file an individual civil action in federal district court. 42 U.S.C. § 2000e-5(f)(1). Thus, any complaint filed after 90 days have elapsed, even if by a matter of days, is untimely and subject to dismissal. *E.g., Mosel v. Hills Dep't Store, Inc.*, 789 F.2d 251, 253 (3d Cir. 1986) (affirming dismissal of complaint filed 91 days after Ms. Kelly received notice of right to sue). The ADA and ADEA adopt the same requirements. *See* 42 U.S.C. § 12117(a) and *Churchill v. Star Enters.*, 183 F.3d 184, 190 (3d Cir. 1999) (ADA); 29 U.S.C. §626(e) and *McCray v. Corry Mfg.*, 61 F.3d 224, 227 (3d Cir. 1995) (ADEA).

Because the 90-day limitations period is a statute of limitations, rather than a jurisdictional requirement, it is subject to equitable tolling. *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 94-95 (1990); *Mosel*, 789 F.2d at 253. In fact, courts within the Third Circuit have

held that the filing of an IFP Motion tolls the 90-day limitations period while that Motion is pending. *E.g.*, *Scary v. Philadelphia Gas Works*, 202 F.R.D. 148, 152-53 (E.D. Pa. 2001); *Woods v. Bentsen*, 889 F. Supp. 179, 185 (E.D. Pa. 1995); *Pino v. Wyeth-Ayerst/AHPC*, Nos. 95-3180, 95-4008, 1995 WL 708551, at *3 (E.D. Pa. Nov. 29, 1995); *Richardson v. Diagnostic Rehabilitation Ctr.*, 836 F. Supp. 252, 254 (E.D. Pa. 1993).  Once the IFP Motion is ruled upon, however, the limitations period resumes running, with whatever time remains from the initial filing.

For example, in *Pino*, 1995 WL 708551, the court faced a situation essentially identical to that present in this case. *Id.* at *2-3.  The plaintiff filed an IFP Motion 86 days after he received his notice of right to sue. *Id.*  Approximately two weeks later, the court denied the IFP Motion, thus restarting the limitations period. *Id.*  Despite having only four days left in the limitations period in which to file a complaint, the plaintiff did not do so until 17 days after the court denied the IFP Motion, or 13 days after the 90-day filing period had ended. *Id.* Accordingly, the court dismissed the action as untimely. *Id.*

Here, the Right to Sue Notice sent to Ms. Kelly is dated March 7, 2002.  See Ex. D. Since the Amended Complaint does not indicate when Ms. Kelly actually received the Notice, there is a presumption that the Notice was received no later than three business days after its mailing. *See Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 239 (3d Cir. 1999) (when date on which plaintiff receives notice of right to sue is unknown or in dispute, pursuant to Fed. R. Civ. P. 6(e), the court should presume that the notice was received three days after it was mailed); *Mosel*, 789 F.2d at 252, n.2 (3d Cir. 1986) (same).  Accordingly, the Court should determine that the 90-day limitations period commenced no later than March 12, 2002.

On May 17, 2002, which was the 67th day of the limitations period, Ms. Kelly filed her IFP Motion. *See* Ex. D. The Court denied Ms. Kelly's Motion effective May 30, 2002. *Id.* The 90-day limitations period governing Ms. Kelly's claim was tolled during the pendency of her IFP Motion (*i.e.*, from May 17 to 30, 2002); however, the limitations period resumed running upon the dismissal of the Motion. *See, e.g., Pino*, 1995 WL 708551, at *2. Therefore, the 90-day limitations period began to run again on May 31, 2002, which was the 68th day. Accordingly, the 90th day – and the last day to file a timely complaint – was June 24, 2002.

Ms. Kelly did not file her Complaint until July 15, 2002 – twenty (20) days after the expiration of the 90-day limitations period. Thus, excluding the tolling period, at least 110 days elapsed between Ms. Kelly's receipt of the Notice of Right to Sue letter and the filing of her Complaint. Therefore, Ms. Kelly's ADEA, Title VII and ADA claims were untimely and this Court should dismiss them with prejudice.

**C.    In Addition To Being Time-Barred, Ms. Kelly's Sexual Harassment Claim Against SAP America (Count C) Also Fails Because She Did Not Exhaust Her Administrative Remedies.**

In paragraph II.C. of the Amended Complaint, Ms. Kelly purports to assert a claim of sexual harassment against SAP America. A critical prerequisite to pursuing a Title VII claim in court, however, is the exhaustion of administrative procedures before the EEOC or a comparable state agency. *See* 42 U.S.C. § 2000e-5(f)(1); *see Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398 (3d Cir. 1976), *cert. denied*, 429 U.S. 1041 (1977); *see also Antol v. Perry*, 82 F.3d 1291, 1296 (3d Cir. 1996). The exhaustion requirement is designed to provide sufficient notice to a defendant concerning the charges against it, and to allow the appropriate agency to investigate discrimination claims and resolve such issues without resort to litigation. *Ostapowicz*, 541 F.2d at 398.

Where, as here, a plaintiff brings a Title VII claim without first asserting those claims before the EEOC, the court must dismiss those claims for failure to exhaust administrative remedies. *Clarkson v. Pennsylvania State Police*, No. Civ. A 99-783, 2000 WL 1513773, at * 9 (E.D. Pa. Oct. 10, 2000); *Parsons v. City of Philadelphia Coordinating Office of Drug and Abuse Programs*, 822 F. Supp. 1181, 1184 (E.D. Pa. 1993). If a plaintiff has filed a charge with the EEOC and then brings suit based on allegations not contained in that charge, a district court may assume jurisdiction over additional charges only "if they are reasonably within the scope of the complainant's original charges and if a reasonable investigation by the EEOC would have encompassed the new claims." *Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1212 (3d Cir. 1984); *see also Antol*, 82 F.3d at 1296. The district court must dismiss claims that fall outside the scope of a reasonable investigation of the administrative charge. *Howze*, 750 F.2d at 1212.

In this case, Ms. Kelly's sexual harassment allegations clearly fall outside the scope of her EEOC Charge. She did not allege a violation of Title VII in her EEOC Charge, nor did she put forth any facts in her Charge that would have caused the EEOC to investigate a possible sexual harassment claim. *See* Ex. B. Ms. Kelly solely checked the boxes for "age" and "disability"; she did not check the "sex" box. *Id.* The Charge, which Ms. Kelly filed under oath, does not reference Title VII or sexual harassment. Nor does Ms. Kelly even hint at possible sexual harassment in her description of her claim. *Id.* Because this Charge does not encompass a sexual harassment claim nor adequately notify the EEOC to investigate a claim of sexual harassment, this Court should bar Ms. Kelly from asserting a sexual harassment claim in this action. *See, e.g., Zerebnick v. Beckwith Mach. Co.*, No. 95-0008, 1996 WL 233763, at *5-6 (W.D. Pa. Mar. 7, 1996) (barring plaintiff's sexual harassment claim because the charge "cannot,

7

by any stretch of the imagination, be read to allege a claim of sexual harassment," where the charge alleged retaliation for complaining about sexual harassment); *Miller-Turner v. Mellon Bank*, No. 94-5409, 1995 WL 298931, at *4 (E.D. Pa. May 16, 1995) (dismissing plaintiff's gender, race and national original claims because they were not raised in EEOC charge), *aff'd*, 91 F.3d 124 (3d Cir. 1996). Accordingly, the Court should dismiss Ms. Kelly's sexual harassment claim with prejudice.[3/]

### D.    Ms. Kelly's FMLA Claim Against SAP America And CIGNA (Count F) Fails Because She Admits On The Face Of Her Amended Complaint That She Received FMLA Protections And That Her Termination Was Based Upon Her Misconduct.

In Count F, Ms. Kelly claims that Defendants violated the FMLA, 29 U.S.C. §§ 2601 *et seq.*, as well as the "common law doctrine of respondent [sic] superior." Compl. ¶ II.F. Although Ms. Kelly does not specify which FMLA provision Defendants allegedly violated, it is nonetheless clear that Ms. Kelly has failed to state a claim under any FMLA provision.

Generally, the FMLA provides eligible employees with the right to take up to 12 workweeks of leave during a 12-month period for a serious health condition. 29 U.S.C. § 2612(a)(1)(D). At the end of the leave period, an employer generally is required to restore the employee to her former position or an equivalent position. 29 U.S.C. § 2614(a)(1). The FMLA declares it unlawful for any employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided [under the FMLA]." It is well established that courts will refuse to recognize a valid claim for interference with FMLA rights in the absence of any injury.

---

3/    To the extent that Ms. Kelly purports to assert a sexual harassment claim under the Pennsylvania Human Relations Act, such a claim fails for the same reasons described above, *i.e.*, failure to exhaust administrative remedies. *See Burgh v. Borough Council of Montrose*, 251 F.3d 465, 471 (3d Cir. 2001); *Douris v. County of Bucks*, No. Civ. A. 99-3357, 2001 WL 767579, *8 (E.D.Pa. July 3, 2001); *Schouten v CSX. Transp., Inc.*, 58 F. Supp.2d 614, 617 (E.D. Pa. 1999).

*See Alifano v. Merck & Co., Inc.*, 175 F. Supp. 2d 792, 794 (E.D. Pa. 2001) (Joyner, J.)

(collecting cases).  Accordingly, to assert a cause of action for interference with FMLA rights, a

plaintiff must claim that the alleged interference caused her to forfeit her FMLA protections.  *Id.*

(citing *Voorhees v. Time Warner Cable Nat'l Div.*, No. 98-1460, 1999 WL 673062, at *4 (E.D.

Pa. Aug. 30, 1999) and *Fry v. First Fidelity Bancorporation*, No. 95-6019, 1996 WL 36910, at

*3-5 (E.D. Pa. Jan. 30, 1996)).

The FMLA also makes it unlawful for an employer to "discharge or in any other manner

discriminate against any individual for opposing any practice made unlawful [under the

FMLA]."  29 U.S.C. §§ 1615(a)(1), (a)(2).  Obviously, the FMLA is not a barrier to the

termination of an employee for cause.  *E.g.*, *Cooper v. Thomson Newspapers*, 6 F. Supp.2d 109,

114 (D. N.H. 1998).  Indeed, the FMLA expressly provides that it should not be construed to

afford any employee "any right, benefit, or position to which the employee would have been

entitled had the employee not taken the leave."  29 U.S.C. § 2614(a)(3)(B).

Accepting as true all of Ms. Kelly's allegations, she nevertheless fails to state a valid

FMLA claim.  First, Ms. Kelly fails to allege that SAP America or CIGNA qualify as

"employers" and that she qualifies as an "eligible employee" under the FMLA.  For this reason

alone, Count F fails.[4/]

Even overlooking these fatal pleading deficiencies, Ms. Kelly's claim still fails.

Critically, the very first sentence of paragraph II.F. states: "The record will show that SAP

America *did approve* my medical leave for depression."  Am. Compl. ¶ II.F. (emphasis added).

Therefore, Ms. Kelly herself concedes that she received FMLA protections.  Moreover, nowhere

---

[4/]    Indeed, even though Ms. Kelly asserts her FMLA claim against both SAP America and
CIGNA, she does not even claim to be a CIGNA employee.  Compl. ¶ I.D.  At a
minimum, therefore, this Court should dismiss Count F against CIGNA.

does Ms. Kelly claim that her termination was motivated by the fact that she had taken FMLA leave. To the contrary, Ms. Kelly admits that the sole basis of her termination was submission of the inappropriate e-mails to Mr. Kemna, the CEO, and she blames Defendants for somehow causing her to engage in this misconduct. *Id.* The FMLA simply does not afford employees with immunity from disciplinary action for misconduct while on FMLA leave. *Cooper*, 6 F. Supp.2d at 114; *cf.* 29 U.S.C. § 2614(a)(3)(B).[5]

Under the FMLA, SAP America was required to provide FMLA leave to Ms. Kelly if eligible, and Ms. Kelly concedes, on the face of her Amended Complaint, that it did so. Accordingly, this Court should dismiss Count F. It does not state a valid claim for relief.[6]

### E.    This Court Should Dismiss Ms. Kelly's Claim Against SAP America And CIGNA Under COBRA And HIPAA (Count I).

Count I purports to state a claim for "violation of COBRA and HIPPA regulations." Defendants assumes that Ms. Kelly is referring to the Consolidated Omnibus Reconciliation Act

---

[5]    Nor does Ms. Kelly's claim that Defendants failed to "track" her medical condition state any cognizable claim under the FMLA. Am. Compl. ¶ II.F. The FMLA does not require an employer or third-party carrier to "track" an employee's condition while on leave; to the contrary, the employee carries the burden of providing certification of a serious health condition to the employer. *See* 29 U.S.C. § 2613(a).

[6]    In Count F, Ms. Kelly also claims that Defendants violated the "Common Law doctrine of Respondent Superior," which Defendants assume is meant to refer to the doctrine of respondeat superior. Compl. ¶ II.F. Respondeat superior, however, is not "a separate tort, but merely a principle by which employers can be held liable for the tortious acts of their employees." *Peek v. Philadelphia Coca-Cola Bottling Co.*, No. 97-3372, 1997 WL 399379, at *1 n.1 (E.D. Pa. July 16, 1997); *see also Calkins v. Dollarland, Inc.*, 117 F. Supp.2d 421, 434 (D. N.J. 2000) (dismissing separate respondeat superior claim); *Northeast Jet Ctr., Ltd. v. Lehigh-Northampton Airport Auth.*, 767 F. Supp. 672, 686-87 (E.D. Pa. 1991) (observing that doctrine of respondeat superior is theory of liability and not separate cause of action). To the extent Count F purports to assert a separate cause of action for "violation" of the doctrine of respondeat superior, therefore, this Court should strike it. Fed. R. Civ. P. 12(f).

("COBRA"), 29 U.S.C. §§ 1161 *et seq.*, and the Health Insurance Portability and Accountability

Act, 42 U.S.C. §§ 300gg *et seq.* ("HIPAA"). Plaintiff's claim is invalid and must be dismissed.

Enacted in 1996, HIPAA expanded the portability and continuity of health insurance by

limited pre-existing condition exclusions and conditions of eligibility for coverage. *See* 42

U.S.C. §§ 300gg *et seq.* However, there is no express private right of action for violation of

HIPAA. *O'Donnell v. Blue Cross Blue Shield of Wyoming*, 173 F. Supp.2d 1176, 1179 (D. Wyo.

2001). Instead, HIPAA provides for state enforcement or enforcement by the Secretary of

Health and Human Services. *Id.* at 1179-80; *see also* 42 U.S.C. §§ 300gg-22, -61.

As for an implied private right of action, the courts to consider the question have all

concluded that there is none, because there was "no congressional intent to create a private right

or remedy" under HIPAA. *O'Donnell,* 173 F. Supp.2d at 1180; *see also Brock v. Provident Am.*

*Ins. Co.*, 144 F. Supp.2d 652, 656-57 (N.D. Tex. 2001) (observing that "no private remedy

exists" under HIPAA); *Means v. Independent Life and Accident Ins. Co.*, 963 F. Supp. 1131,

1135 (M.D. Ala. 1997) ("[T]he court finds no evidence of congressional intent to create a private

right of action under HIPAA"); *Wright v. Combined Ins. Co. of Am.*, 959 F. Supp. 356, 362-63

(N.D. Miss. 1997) ("In HIPAA, the undersigned cannot find any manifest congressional intent to

create a new federal cause of action. . . .").

With regard to COBRA, ERISA provides employees with a private cause of action

against plan administrators failing to provide the required COBRA notifications. 29 U.S.C. §§

1132(a)(1), (c). *See generally Chatterjee v. School Dist. of Philadelphia*, 170 F. Supp.2d 509,

518 (E.D. Pa. 2001); *Rotto v. Haskells of Pittsburgh, Inc.*, No. 96-360, 1997 WL 689437, at *5

(E.D. Pa. 1997).

In this case, Ms. Kelly purports to assert Count I as a private litigant, and there is no indication that the Commonwealth of Pennsylvania or the Secretary of Health and Human Services are proceeding with an enforcement action on behalf of Ms. Kelly. Therefore, given the absence of an express or implied private right of action under HIPAA, Count I cannot state a claim for which relief can be granted. Moreover, Ms. Kelly does not allege (nor can she) that there was a failure to provide her a COBRA notice. In the absence of any allegation regarding this critical element of a COBRA claim, Count I cannot state a claim under COBRA, either. Accordingly, this Court should dismiss Count I with prejudice.

**F.    Ms. Kelly's "Blackballing" And Libel Claims Against SAP America (Counts A and E) Are Time-Barred.**

Ms. Kelly essentially asserts two claims for defamation in her Amended Complaint. In Count A, described as "blackballing," Ms. Kelly alleges that SAP America allowed her manager and co-workers to "slander and blackball me in the work environment" by circulating an allegedly fake customer complaint about her. Compl. ¶ II.A. In Count E, described as "libel," Ms. Kelly alleges that Mr. Kleinman's letter dated March 23, 2001, in which he notified Ms. Kelly of her termination of employment, was libelous. Compl. ¶ II.E. Specifically, Ms. Kelly alleges that Mr. Kleinman "deliberately manipulated the facts to distort the truth," and that the letter "destroys my work history and the potential for future employment." *Id.*

Under Pennsylvania law, any action for libel or slander must be filed within one-year. 42 P.S. § 5523(1); *Spain v. Vicente*, 461 A.2d 833, 837 (Pa. Super. 1983). The statute of limitations begins to run upon the publication of the defamatory statement. *See id.*; *Abernethy v. Williams*, 584 A.2d 1085, 1086-87 (Pa. Cmwlth. 1990), *appeal denied*, 602 A.2d 861 (Pa. 1992); *Andrews*

*v. Time, Inc.*, 690 F. Supp. 362, 364 (E.D. Pa. 1988); *Merv Swing Agency, Inc. v. Graham Co.*, 579 F. Supp. 429, 430 (E.D. Pa. 1983).

With respect to Ms. Kelly's "blackballing" claim, she does not allege exactly when the allegedly slanderous statements were published. Compl. ¶ II.A. Regardless, publication could not have occurred any later than February 15, 2001, the date that Ms. Kelly allegedly took her leave of absence allegedly because of such statements. Ms. Kelly, however, did not file the instant lawsuit, asserting her "blackballing" claim, until July 15, 2002 – at least 1 ½ years later. Count A is therefore untimely.

Regarding Ms. Kelly's libel claim, the allegedly libelous termination letter was sent to Ms. Kelly on March 23, 2001. Compl. ¶ II.E. Therefore, the latest date that Ms. Kelly could file a libel claim based on this letter was March 23, 2002. Again, however, Ms. Kelly did not file the instant lawsuit until July 15, 2002 – almost four months later. Therefore, as with Count A, the one-year statute of limitations bars Count E. As a result, this Court should dismiss Counts A and E.

**G.    Ms. Kelly's "Whistleblowing And Gross Negligence" Claim Against SAP America (Count D) Fails To State A Valid Claim For Relief.**

In paragraph II.D. of her Amended Complaint, Ms. Kelly claims that the two e-mails she sent to the CEO, Mr. Kemna, constituted "whistleblowing" and that SAP America's use of them "as a means for [her] termination is illegal." Compl. ¶ II.D. She also claims that "SAP" (she does not specify SAP America or SAP AG) owed a "duty of care to its employees" and that its "handling of [her] employment shows gross negligence and reckless indifference on the part of the company." *Id.*

13

Ms. Kelly fails to identify any federal or state statute under which she purports to bring her whistleblowing claim.  Indeed, there is no federal whistleblowing law that applies in this context.  *Cf.* 29 U.S.C. § 660(c) (Occupational Safety and Health Act); 42 U.S.C. § 7622 (Clean Air Act); 42 U.S.C. § 6971 (Solid Waste Disposal Act).  Nor does the Pennsylvania Whistleblower Law, 43 P.S. §§1421 *et seq.* ("Whistleblower Law"), apply.  That statute expressly covers only employees of a "public body," which is generally defined as a state entity or any other body that is funded by or through the Commonwealth.  43 P.S. §§ 1422; *see also Clark v. Modern Group Ltd.*, 9 F.3d 321, 332 (3d Cir. 1993); *Johnson v. Resources for Human Dev., Inc.*, 843 F. Supp. 974, 980 (E.D. Pa. 1994) (Joyner, J.).  Conspicuously absent from the Amended Complaint is any allegation that even suggests that SAP America is a "public body."  Indeed, Ms. Kelly's reference to herself as a "stockholder of this company" strongly indicates that SAP America falls squarely in the category of private employers.  *See* Am. Compl., last unnumbered paragraph.  Accordingly, Ms. Kelly clearly cannot state a claim for whistleblowing under any statutory provision.

Nor is there any whistleblower protection for Ms. Kelly under Pennsylvania common law.  In Pennsylvania, there is a strong presumption that employment is at-will and terminable by either party for any reason or no reason absent a statutory or contractual provision to the contrary.  *Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 658 (3d Cir. 1990); 843 F. Supp. at 978; *Shick v. Shirey*, 716 A.2d 1231, 1233 (Pa. 1998); *Geary v. United States Steel Corp.*, 319 A.2d 174, 175-76 (Pa. 1974); *Nix v. Temple Univ.*, 596 A.2d 1132, 1135 (Pa. Super. 1991).[7]  Pennsylvania courts have recognized a very narrow exception to this general rule where

---

[7]    As discussed *infra* Section III.H, Ms. Kelly was an at-will employee, and her claim that she entered into an "implied contract of employment with SAP America" fails as a matter of Pennsylvania law.  Am. Compl. ¶ II.H.

14

the dismissal of an at-will employee "would threaten clear mandates of public policy." *Shick,*

716 A.2d at 1234. Thus, courts have allowed employees to proceed on a common law wrongful

discharge claim where an employee alleged retaliatory discharge for: filing a workers'

compensation claim, *Shick,* 716 A.2d at 1238; for filing an unemployment compensation claim,

*Highhouse v. Avery Transp.,* 660 A.2d 1374, 1378 (Pa. Super. 1995); for refusing to take a

polygraph test, *Kroen v. Bedway Security Agency,* 633 A.2d 628, 633 (Pa. Super. 1993); for

fulfilling a statutory duty to report nuclear violations, *Field v. Philadelphia Elec. Co.,* 565 A.2d

1170, 1180-82 (Pa. Super. 1989); and for serving on a jury, *Reuther v. Fowler & Williams, Inc.,*

386 A.2d 119, 120-21 (Pa. Super. 1978).

In this case, Ms. Kelly has not even identified a public policy that she alleges her

termination violated. In fact, Ms. Kelly readily admits, on the face of her Amended Complaint,

that SAP America terminated her employment for sending an e-mail to Wolfgang Kemna, the

CEO of SAP America. Am. Compl. ¶ II.D. This conduct clearly does not fall into the narrow

set of circumstances, described above, in which Pennsylvania courts have recognized a public

policy exception to the general rule that an at-will employee may be terminated for any reason.

*Smythe v. Pillsbury Co.,* 914 F. Supp. 97, 101 (E. D. Pa. 1996) (holding that discharge of

employee for sending inappropriate e-mails did not violate public policy and accordingly

granting employer's motion to dismiss wrongful discharge claim).[8] Accordingly, this Court

should dismiss Count D.

---

[8] Nor can Ms. Kelly assert a "gross negligence" claim against SAP America. Any such
claim is barred by the Pennsylvania Workers' Compensation Act ("PWCA"), which "is
the exclusive means for obtaining compensation for injuries which has been substituted
for common law tort actions between employees and employers." *Shick,* 716 A.2d at
1237; *see also Chisholm v. Nat'l Corp. for Hous. Partnerships,* No. Civ. A. 99-3602,
2000 WL 307245, at * 3 (E.D. Pa. Mar. 22, 2000) (the PWCA "functions as a complete
bar to state law tort claims in the employment context").

**H.      Ms. Kelly's Breach Of Implied Contract Claim Against SAP America (Count H)**
**Fails As A Matter Of Law.**

In Count H, Ms. Kelly alleges that she "entered into an implied contract of employment

with SAP America" based upon the "Company Code of Conduct." Am. Compl. ¶ II.H.  Ms.

Kelly asserts that SAP America allegedly violated "this implied contract" by failing to

investigate the substance of the e-mails she sent to Mr. Kemna, the CEO of SAP America.  *Id.*

Ms. Kelly therefore appears to allege that the Company Code of Conduct ("Code")[9/] somehow

supplanted her status as an at-will employee, such that her conduct in sending the e-mails to Mr.

Kemna could not be a basis for her discharge.  Ms. Kelly is wrong.

As discussed *supra* Section III.G, there is a strong presumption in Pennsylvania that

employment is at-will and terminable for any reason. *E.g.*, *Schoch*, 912 F.2d at 658; *Johnson*,

843 F. Supp. at 978; *Shick*, 716 A.2d at 1233; *Geary*, 319 A.2d at 175-76; *Nix*, 596 A.2d at 1135.

"The burden of overcoming the presumption and proving that one is not employed at-will 'rests

squarely' with the employee." *Luteran v. Loral Fairchild Corp.*, 688 A.2d 211, 214 (Pa. Super.)

(quoting *Rutherfoord v. Presbyterian-University Hosp.*, 612 A.2d 500 (Pa. Super. 1992)), *appeal*

*denied*, 701 A.2d 578 (Pa. 1997); *see also DiBonaventura v. Consolidated Rail Corp.*, 539 A.2d

865, 867 (Pa. Super. 1988) ("The burden of proof here is very great.").  In Pennsylvania, an

employee handbook or policy can form the basis for an implied contract only when if it contains

"a clear indication that the employer intended to overcome the at-will presumption." *Luteran*,

688 A.2d at 214-15; *see also Mercante v. Preston Trucking Co.*, No. 96-5904, 1997 WL 288614,

---

9/     Ms. Kelly appears to be referring to the "Guide to Business Conduct" which is a section
of the HR Manual of SAP America.  *See* Ex. E and note 9 *infra*.  Nonetheless, for
simplicity's sake, in this Motion, Defendants will refer to the purported implied contract
as the "Code."

at *2 (E.D. Pa. May 21, 1997); *Jacques v. Akzo Int'l Salt, Inc.*, 619 A.2d 748, 753 (Pa. Super. 1993).

This case is almost identical to *Mercante*, 1997 WL 288614, in which the Court granted the employer's motion to dismiss a breach of implied contract claim. *Id.* at *3. In that case, the employer terminated the plaintiff for refusing to move his car into the Company's designated area for employee parking. *Id.* at *1. The plaintiff filed suit, alleging, *inter alia*, that his termination violated an implied contract created by the Company's employee handbook that altered his status as an at-will employee. *Id.* at *2. Attaching a copy of the handbook to his complaint, the plaintiff pointed to language that described a progressive discipline policy as proof that he could only be terminated as a "last resort." *Id.*

In rejecting the plaintiff's argument, and granting the Company's motion to dismiss, the court explained:

> Even when entertaining a motion to dismiss, mere allegations of the existence of a policy or the failure of an employer to adhere to a policy is not sufficient to overcome the burden of production on Ms. Kelly to show that a contractual employment relationship was formed.

*Id.* The court specifically noted that the plaintiff had failed to allege that the Company had provided the handbook as part of a binding offer of employment. *Id.* at *3. The Court further noted that the plaintiff had failed to identify "unequivocal provisions" in the handbook that indicated the Company's intent to renounce the at-will employment relationship. *Id. See also Rembert v. Allstate Ins. Co.*, No. 00-848, 2000 WL 1717245, at *1 (E.D. Pa. Nov. 15, 2000) (granting motion to dismiss breach of implied contract claim based upon insufficient allegations that employer intended to renounce at-will employment relationship); *Raines v. Haverford College*, 849 F. Supp. 1009, 1012 (E.D. Pa. 1994) (Joyner, J.) (same); *Anderson v. Haverford*

*College*, 851 F. Supp. 179, 181-82 (E.D. Pa. 1994) (Joyner, J.) (same); *Luteran*, 688 A.2d at 216

(affirming trial court's grant of nonsuit on implied contract claim based on employee handbook);

*Jacques*, 619 A.2d at 753 (granting summary judgment on implied contract claim based on

employee handbook).

Here, Ms. Kelly has pleaded even less than the plaintiff in *Mercante*. Ms. Kelly has not

attached a copy of the Code that she alleges created an implied contract. Nor does she point to

*any* language in the Code that somehow altered her at-will status. *See* Am. Compl. ¶ II.H. Put

simply, the Amended Complaint contains no allegations that SAP America provided the Code as

part of a binding offer of employment or that they intended to alter the at-will employment

relationship with Ms. Kelly. As a result, Ms. Kelly fails to allege facts sufficient to support a

claim for breach of an implied contract. Therefore, this Court should dismiss Count H.[10]

I. **Ms. Kelly's Claims Of "Malice And Collusion" And "Gross Disrespect" (Counts J And K) Against SAP America and CIGNA Do Not State Claims Cognizable Under Pennsylvania Law.**

In Counts J and K of the Amended Complaint, Ms. Kelly alleges that SAP America and

CIGNA are liable to her for "malice and collusion" and "gross disrespect." Am. Compl. ¶¶ II.J,

---

[10] The Court may also consider a printout of the HR Manual of SAP America, available to employees via the Company's intranet, which is attached hereto as Exhibit E. *Oshiver*, 38 F.3d at 1384 n.2. In its Introduction, the HR Manual contains unequivocal language stating: "***This manual does not create an implied or express contract or agreement between SAP and any employee. . . . Employment with SAP is 'at will,' which means it is terminable at will at any time either by you or SAP.***" *See* Ex. E, at 3 (emphasis added). This language clearly indicates that the HR Manual does not alter employees' at-will status, and, accordingly, the Court should dismiss Ms. Kelly's implied contract claim with prejudice. *See Raines*, 849 F. Supp. at 1012 (reviewing employee handbook attached to defendant's motion to dismiss and accordingly dismissing plaintiff's implied contract claim based on express statement that handbook "is not a contract of employment"); *Anderson*, 851 F. Supp. at 181-82 (same).

II.K.  Put simply, these "claims" do not exist under Pennsylvania of federal law.  Accordingly, the Court should dismiss Counts J and K with prejudice.

## IV.  **CONCLUSION**

For all of the foregoing reasons, Counts A through K in Ms. Kelly's Amended Complaint fail as a matter of law.  Accordingly, this Court should grant Defendants' Motion and issue an order dismissing Ms. Kelly's Amended Complaint in its entirety with prejudice.

Respectfully submitted,

James N. Boudreau (Id. No. 77891)
Tamsin J. Newman (Id. No. 81001)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA  19103

Attorneys for Defendants SAP America, Inc.
and CIGNA Healthcare