## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DENISE KELLY,

        Plaintiff,

    v.

SAP AMERICA, INC. and CIGNA
HEALTHCARE,

        Defendants.

Civil Action No. 02-CV-2955

02 NOV -6 PH 8: 26
REC'D
EDPA CLERK

## <u>ORDER</u>

AND NOW, this _____ day of _____ 2002, it is hereby ORDERED that

Defendants' Motion to Dismiss All Counts (Counts A – G) of Plaintiff's Second Amended

Complaint Filed October 11, 2002 is GRANTED.


BY THE COURT:


_____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DENISE KELLY,<br><br>               Plaintiff,<br><br>    v.<br><br>SAP AMERICA, INC. and CIGNA<br>HEALTHCARE,<br><br>              Defendants. | Civil Action No. 02-CV-2955 |

---

## DEFENDANTS' MOTION TO DISMISS ALL COUNTS (COUNTS A – G)
## OF PLAINTIFF'S SECOND AMENDED COMPLAINT FILED OCTOBER 11, 2002

Defendants SAP America, Inc. ("SAP America") and CIGNA Healthcare

("CIGNA") (collectively, "Defendants"), by and through their attorneys, hereby move pursuant

to Fed. R. Civ. P. 12(b)(6) to dismiss all Counts (A-G) of Plaintiff Denise Kelly's ("Ms. Kelly")

Second Amended Complaint filed on October 11, 2002.  In support of their Motion, Defendants

state as follows:

      1      Ms. Kelly is a former employee of SAP America.  On March 23, 2001, SAP

America terminated Ms. Kelly's employment for sending an inappropriate e-mail to Wolfgang

Kemna, the Chief Executive Officer of SAP America.  On December 3, 2001, Ms. Kelly dual-

filed a Charge of Discrimination with the Equal Employment Opportunity Commission

("EEOC") and the Pennsylvania Human Relations Commission, alleging age and disability

discrimination against SAP America.  On March 7, 2002, the EEOC issued a Dismissal and

Notice of Rights ("Right to Sue Notice").  Despite receiving her Right to Sue Notice, Ms. Kelly

did not immediately file a complaint.  Instead, on May 17, 2002, she filed a Motion For Leave

To Proceed *In Forma Pauperis* ("IFP Motion"), which this Court denied effective May 30, 2002.

Then, on July 15, 2002, 130 days after the EEOC issued its Notice of Right to Sue, Ms. Kelly

filed her Complaint in this action. Unfortunately for Ms. Kelly, even if this Court assumes each

and every allegation contained in the Second Amended Complaint is true, Ms. Kelly has failed to

state a single viable claim under Pennsylvania law.

      2.      All of Ms. Kelly's claims are asserted against SAP America. Only Count F, her

"gross negligence" claim, is asserted against CIGNA. Accordingly, although all of Ms. Kelly's

claims should be dismissed, at a minimum, Counts A-E and G should be dismissed as against

CIGNA.

      3.      Count A, under the Family and Medical Leave Act ("FMLA"), is subject to

dismissal because SAP America did not "refuse" to restore Ms. Kelly to her former position.

According to her own factual assertions, Ms. Kelly never asked to be restored to her former

position, and her own physicians advised her that she was unable to return to work.

      4.      Count B, which purports to state a claim under the federal Americans With

Disabilities Act ("ADA"), is time-barred. As noted above, even allowing for equitable tolling

while this Court considered Ms. Kelly's IFP Motion, Ms. Kelly did not file this action within 90

days of receipt of her Notice of Right To Sue from the EEOC.

      5.      Count C, asserted under the Pennsylvania Whistleblower law, is subject to

dismissal because Ms. Kelly has failed to allege sufficient facts to establish that SAP America is

a "public body" subject to the statute. In any event, the applicable 180-day limitations period

would bar any such claim.

      6.      Counts D and E, which purport to state claims under Pennsylvania law for

wrongful discharge based on breach of an alleged implied contract as well as the covenant of

good faith and fair dealing, are subject to dismissal because Ms. Kelly is an at-will employee.

Pennsylvania law does not recognize such claims in the at-will employment context.

7       Count F, which alleges gross negligence against SAP America and CIGNA, is

subject to dismissal because (a) with respect to SAP, it is barred by the Pennsylvania Workers

Compensation Act, and (b) with respect to CIGNA, Ms. Kelly has not alleged facts that establish

the basic elements of negligence under Pennsylvania law.

8.      Count G , alleging defamation, is time-barred.  Ms. Kelly did not file her claim

within the applicable one-year statute of limitations.

          WHEREFORE, for all the foregoing reasons and those contained in the

accompanying Memorandum of Law, this Court should grant Defendants' Motion to Dismiss All

Counts (A – G) of Plaintiff's Amended Complaint filed on October 11, 2002 and issue an order

dismissing the Second Amended Complaint in its entirety and with prejudice.

Respectfully submitted,

James N. Boudreau (Id. No. 77891)
Tamsin J. Newman (Id. No. 81001)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA  19103

Attorneys for Defendants SAP America, Inc.
and CIGNA Healthcare

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DENISE KELLY,

       Plaintiff,

   v.

SAP AMERICA, INC. and CIGNA
HEALTHCARE,

       Defendants.

Civil Action No. 02-CV-2955

02 NOV 6 PM 8: 26

EDPA CLERK

## MEMORANDUM IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS ALL COUNTS (COUNTS A-G) OF
## PLAINTIFF'S AMENDED COMPLAINT FILED ON OCTOBER 11, 2002

James N. Boudreau (Id. No. 77891)
Tamsin J. Newman (Id. No. 81001)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103

Attorneys for Defendants SAP America, Inc.
and CIGNA Healthcare

## **TABLE OF CONTENTS**

I.      INTRODUCTION ............................... 1

II.     STATEMENT OF PLAINTIFF'S ALLEGATIONS ..... ....................... 2

III.    ARGUMENT............... ..... 4

        A.    The Standard Under Rule 12(b)(6) .... .................... 4

        B.    Ms. Kelly's FMLA Claim (Count A) Does Not State A Valid
              Claim For Relief ................................................................................................... 5

        C.    Ms. Kelly's ADA Claim (Count B) Is Time-Barred...... ................................ 6

        D.    Ms. Kelly's "Wrongful Discharge – Violation of Whistleblower
              St" (sic) Claim (Count C) Fails To State A Valid Claim For Relief. ................. 9

        E.    Ms. Kelly's "Wrongful Discharge – Breach Of Implied Contract"
              Claim (Count D) Fails As A Matter Of Law. ...................................    1

        F.    Ms. Kelly's "Wrongful Discharge – Breach of Covenant of Good
              Faith And Fair Dealing" Claim (Count E) Fails As A Matter Of
              Law. .............................................................................................; ............... 14

        G.    Ms. Kelly's Gross Negligence Claim (Count F) Against SAP
              America And CIGNA Fails As A Matter Of Law ................... ................... 15

        H.    Ms. Kelly's Defamation Claim (Count G) Is Time-Barred ..... ...... 16

IV.     CONCLUSION...................                                             17

## TABLE OF AUTHORITIES

### FEDERAL RULES AND STATUTES

Fed. R. Civ. P. 12(b)(6) .. ........2, 4

Fed. R. Civ. P. 6(e) ........... ..8

Family and Medical Leave Act,
    29 U.S.C. §§ 2601 *et seq.* .....

Title VII of the Civil Rights Act of 1964,
    42 U.S.C. § 2000e *et seq.* ................... .6

Americans with Disabilities Act of 1990,
    42 U.S.C. §§ 12101 *et seq.* ............... ................................6

### STATE STATUTES

42 P.S. § 5523(1) ......... ........................16

Pennsylvania Whistleblower Law,
    43 P.S. §§1421 *et seq.* ............. .............9, 10

### FEDERAL CASES

*Anderson v. Haverford College,*
    851 F. Supp. 179 (E.D. Pa. 1994) ......... 13, 14

*Andrews v. Time, Inc.,*
    690 F. Supp. 362 (E.D. Pa. 1988) ....... ................................16

*Chisholm v. Nat'l Corp. for Hous. Partnerships,*
    No. Civ. A. 99-3602, 2000 WL 307245 (E.D. Pa. Mar. 22, 2000)........................................ 15

*Churchill v. Star Enters.,*
    183 F.3d 184 (3d Cir. 1999) .6

*Clark v. Modern Group Ltd.,*
    9 F.3d 321 (3d Cir. 1993) .... ............................................................9

*Cohen v. Salick Health Care, Inc.,*
    772 F. Supp. 1521 (E.D.Pa. 1991) ...................................10

*Cooper v. Thomson Newspapers,*
    6 F. Supp.2d 109, 114 (D. N.H. 1998) ...

*Gallant v. BOC Group, Inc.,*
    886 F. Supp. 202 (D. Mass. 1995) 10

*Herbst v. General Accident Ins. Co.,*
    1999 WL 820194 (E.D. Pa. Sept. 30, 1999) ....          14

*Hishon v. King & Spalding,*
    467 U.S. 69 (1984) .......          .4

*Irwin v. Dep't of Veterans Affairs,*
    498 U.S. 89 (1990) .................          7

*Johnson v. Resources for Human Dev., Inc.,*
    843 F. Supp. 974 (E.D. Pa. 1994) ...........          ...9

*Mercante v. Preston Trucking Co.,*
    No. 96-5904, 1997 WL 288614 (E.D. Pa. May 21, 1997)          12, 13

*Merv Swing Agency, Inc. v. Graham Co.*
    579 F. Supp. 429 (E.D. Pa. 1983) ....          16

*Mosel v. Hills Dep't Store, Inc.,*
    789 F.2d 251 (3d Cir. 1986)          ....6, 7, 8

*Oshiver v. Levin, Fishbein, Sedran & Berman,*
    38 F.3d 1380 (3d Cir. 1994)........................          ................3

*Pino v. Wyeth-Ayerst/AHPC,*
    Nos. 95-3180, 95-4008, 1995 WL 708551 (E.D. Pa. Nov. 29, 1995)          .7, 8

*Raines v. Haverford College,*
    849 F. Supp. 1009 (E.D. Pa. 1994)          ...........13, 14

*Rembert v. Allstate Ins. Co.,*
    No. 00-848, 2000 WL 1717245 (E.D. Pa. Nov. 15, 2000)          13

*Richardson v. Diagnostic Rehabilitation Ctr.,*
    836 F. Supp. 252 (E.D. Pa. 1993) ............          7

*Scary v. Philadelphia Gas Works,*
    202 F.R.D. 148 (E.D. Pa. 2001)          .7

*Schoch v. First Fidelity Bancorporation,*
    912 F.2d 654 (3d Cir. 1990) ..............          12

*Schrob v. Catterson,*
    948 F.2d 1402 (3d Cir. 1991) ..          .4

*Seitzinger v. Reading Hosp. & Med. Ctr.,*
    165 F.3d 236 (3d Cir. 1999) ..............          .8

*Vaughan v. Pathmark Stores, Inc.,*
   No. 99-0018, 1999 WL 299576 (E.D. Pa. May 10, 1999) .15

*Woods v. Bentsen,*
   889 F. Supp. 179 (E.D. Pa. 1995) ........ .7

## STATE CASES

*Abernethy v. Williams,*
   584 A.2d 1085 (Pa. Cmwlth. 1990), *appeal denied,* 602 A.2d 861 (Pa. 1992) ....16

*Denton v. Silver Stream Nursing Rehabilitation Ctr.,*
   739 A.2d 571 (Super. Ct. 1999) ........................... 10

*DiBonaventura v. Consolidated Rail Corp.,*
   539 A.2d 865 (Pa. Super. 1988) ............

*Donahue v. Federal Expr.,*
   753 A.2d 238 (Pa. Super. 2000) .14

*Geary v. United States Steel Corp.,*
   319 A.2d 174 (Pa. 1974) .......... 12

*Herczeg v. Hampton Township Mun. Auth.,*
   766 A.2d 866 (Pa. Super. 2001)............. ..16

*Jacques v. Akzo Int'l Salt, Inc.,*
   619 A.2d 748 (Pa. Super. 1993) 12, 13

*Luteran v. Loral Fairchild Corp.,*
   688 A.2d 211 (Pa. Super.), *appeal denied,* 701 A.2d 578 (Pa. 1997) .... 12, 13

*Nix v. Temple Univ.,*
   596 A.2d 1132 (Pa. Super. 1991) .... 12

*O'Rourke v. Pennsylvania Dep't of Corrections,*
   730 A.2d 1039 (Cmwlth. 1999) ..................

*Shick v. Shirey,*
   716 A.2d 1231 (Pa. 1998) 12, 15

*Spain v. Vicente,*
   461 A.2d 833 (Pa. Super. 1983) ..........16

## I.     **INTRODUCTION**

This action arises out of Plaintiff Denise Kelly's ("Ms. Kelly") employment with

Defendant SAP America, Inc. ("SAP America") and the termination of that employment

relationship on March 23, 2001  On July 15, 2002, Ms. Kelly – who is proceeding *pro se* – filed

a Complaint against SAP America, SAP AG and CIGNA Healthcare ("CIGNA").  She did not

serve the Complaint upon SAP America, SAP AG or CIGNA.  Instead, she served SAP America

and CIGNA ("Defendants")[1/] with a Complaint containing the heading "AMENDED 7/15/02"

("Amended Complaint").  This "Amended Complaint" appeared to be virtually identical to the

Complaint filed with the Court.  The Amended Complaint contained seven (7) single-spaced

pages of exceedingly detailed allegations, purporting to assert eleven (11) separate causes of

action.  A copy of the Amended Complaint is attached hereto as Exhibit A.

On September 11, 2002, Defendants filed a Motion to Dismiss the Amended Complaint

in its entirety.  In response, on October 11, 2002, Ms. Kelly filed yet another complaint ("Second

Amended Complaint").  Attaching 31 exhibits, the Second Amended Complaint asserts the

following claims:  (A) violation of the Family and Medical Leave Act ("FMLA"); (B) disability

discrimination under the Americans With Disabilities Act ("ADA"); (C) "wrongful discharge –

violation of whistleblower st [sic]"; (D) "wrongful discharge – breach of implied contract"; (E)

"wrongful discharge breach of covenant of good faith and fair dealing"; (F) "gross negligence";

and (G) defamation.

---

[1/]     Ms. Kelly never effected service upon SAP AG; accordingly, the Motion to Dismiss was
submitted solely on behalf of SAP America and CIGNA.  In any event, as set forth
below, Ms. Kelly has now withdrawn her claims against SAP AG.

All of Ms. Kelly's claims are asserted against SAP America. Only Count F is asserted against CIGNA.[2/]

The Second Amended Complaint differs from the Amended Complaint in several respects. First, Ms. Kelly has removed SAP AG as a defendant. Second, Ms. Kelly has withdrawn: her federal age and sex discrimination claims; her claims under the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), the Health Insurance Portability and Accountability Act ("HIPAA"); and her claims of "malice and collusion" and "gross disrespect." Third, Ms. Kelly has added a claim for breach of the covenant of good faith and fair dealing.

As set forth more fully below, despite ample opportunity to amend her claims, Ms. Kelly's Second Amended Complaint remains legally deficient. Each of Ms. Kelly's claims is either time-barred or fails to state a valid claim for relief. Accordingly, pursuant to Fed. R. Civ. P. 12(b)(6), Defendants move to dismiss the Second Amended Complaint in its entirety and with prejudice.

## II.    STATEMENT OF PLAINTIFF'S ALLEGATIONS

For purposes of this Motion only, Defendants accept as true the following facts alleged in the Second Amended Complaint. SAP America hired Ms. Kelly on or about June 30, 1997. 2d Am. Compl. ¶ 21  On or about February 15, 2001, Ms. Kelly requested, and SAP America granted, a leave of absence pursuant to the FMLA for depression. *Id.* ¶16; Exs. 5, 9, 30. While on leave, Ms. Kelly continued to have access to the Company's e-mail system. *Id.* ¶ 35.

---

[2/]    For the reasons set forth below, the Court should dismiss all of Ms. Kelly's claims as against both Defendants. However, even if the Court decided not to grant the instant Motion to Dismiss all claims, the Court should dismiss Counts A-E and G with prejudice as against CIGNA because only Count F is asserted against CIGNA.

Shortly after Ms. Kelly began her leave of absence, Wolfgang Kemna, then-CEO of SAP America, sent an e-mail to all SAP America employees asking employees to respond to an online Company survey. *Id.* ¶ 54; Ex. 17. Instead of accessing the survey online, Ms. Kelly two e-mails directly to Mr. Kemna, the CEO. *Id.* ¶ 54; Exs. 18, 19. The first e-mail contained the subject heading, "an employee is nothing more than a used condom," and the text stated: "They are great when they work but what a bitch when they break. . . . This company keeps a soldier in combat until their [sic] dead." *Id.* Ex. 18. In the second e-mail, sent later the same day, Ms. Kelly admitted to sending the first e-mail and attempted to explain her misconduct. *Id.* Ex. 19.[3/]

On March 23, 2001, Lawrence Kleinman, Senior Vice President, notified Ms. Kelly by letter that SAP America was terminating her employment for insubordination and gross disrespect based upon one of the e-mails she had sent to the CEO. *Id.* Ex. 20.

On December 3, 2001, Ms. Kelly filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") against SAP America. In her charge, Ms. Kelly claimed that SAP America discriminated against her on the basis of age and disability. *See* Charge of Discrimination (attached hereto as Ex. B).

On March 7, 2002, the EEOC issued a Dismissal and Notice of Rights ("Right to Sue Notice"). The Right to Sue Notice expressly informed Ms. Kelly that she must file any lawsuit based on the Charge within 90 days of receipt of the Notice. *See* Dismissal and Notice of Rights (attached hereto as Ex. C).

_____

[3/]    On a motion to dismiss, the Court may consider all of the exhibits attached to Ms. Kelly's Second Amended Complaint, including her two e-mails (*see* Exs. 18 and 19). *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994).

On May 17, 2002, Ms. Kelly filed a motion for leave to proceed *in forma pauperis* ("IFP Motion"), which this Court denied effective May 30, 2002. *See* Certified Civil Docket (attached hereto as Ex. D). On July 15, 2002, 130 days after she received her Notice of Right to Sue, Ms. Kelly filed a Complaint against SAP America, SAP AG, and CIGNA Healthcare. *Id.* Ms. Kelly served her Amended Complaint upon CIGNA on August 22, 2002, and upon SAP America on September 5, 2002.

On September 11, 2002, Defendants filed a Motion to Dismiss All Counts (A – K) of Plaintiff's Amended Complaint. On September 19, 2002, the Court entered an order extending the time for Ms. Kelly to respond to Defendants' Motion to Dismiss to October 25, 2002.

On or about October 21, 2002, SAP America received a copy of the Second Amended Complaint filed with the Court on October 11, 2002. Ms. Kelly did not serve a copy of the Second Amended Complaint upon Defendants' counsel of record. As a result, on October 31, 2002, the Court granted Defendants' Motion to set the date for responding to the Second Amended Complaint for November 6, 2002.

## III.    ARGUMENT

### A.    The Standard Under Rule 12(b)(6)

In ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), this Court must accept the Second Amended Complaint's allegations as true and view them in the light most favorable to Ms. Kelly. *Schrob v. Catterson*, 948 F.2d 1402, 1405 (3d Cir. 1991). If, after doing so, it appears that Ms. Kelly can prove no set of facts that would entitle her to relief, the Court should dismiss the Second Amended Complaint. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). As set forth below, even assuming the Second Amended Complaint's allegations are

4

true, each Count of Ms. Kelly's Second Amended Complaint fails as a matter of law. As a result, this Court should dismiss the Second Amended Complaint in its entirety.

**B.      Ms. Kelly's FMLA Claim (Count A) Does Not State A Valid Claim For Relief.**

In Count A, Ms. Kelly claims that SAP America violated the FMLA, 29 U.S.C. §§ 2601 *et seq.* 2d Am. Compl. ¶¶ 20-32. Specifically, she alleges that SAP America "refused to return [her] to the job position that she filled prior to the beginning of her medical leave, and likewise refused to offer her an equivalent position or the position offered by Arlene Migram on 2/9/2001 as a Customer Advocate." *Id.* ¶ 24. Ms. Kelly's FMLA claim is wholly invalid.

The FMLA generally provides eligible employees the right to take up to 12 workweeks of leave during a 12-month period for a serious health condition. 29 U.S.C. § 2612(a)(1)(D). At the end of the leave period, an employer generally is required to restore the employee to her former position or an equivalent position. 29 U.S.C. § 2614(a)(1). The FMLA, however, is not a barrier to the termination of an employee for cause. *E.g., Cooper v. Thomson Newspapers*, 6 F. Supp.2d 109, 114 (D. N.H. 1998). Indeed, the FMLA expressly provides that it should not be construed to afford any employee "any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave." 29 U.S.C. § 2614(a)(3)(B).

Based on the above, Ms. Kelly's claim that SAP America violated the FMLA by somehow "refusing" to restore her to her position is utterly without merit. According to Ms. Kelly's own factual assertions, "On or about 3/23/2001," the very date of her termination, SAP America:

> was notified that *my doctors would not allow me to return to my position* under the conditions that I was working that they felt it constituted abuse and aggravated my condition and that some accommodation would have to be made. . . .

5

2d Am. Compl. ¶ 17 (emphasis added); *see also Id.* ¶ 35.  Ms. Kelly also attaches to her Second

Amended Complaint a physician's note dated 3/14/01 stating that Ms. Kelly "will need to be off

work duty until 5/1/01."  *Id.* (Ex. 5).

In view of the above, Ms. Kelly clearly did not ask SAP to restore her to her position in

March 2001, nor was she in any state to do so, based upon the medical opinions of her own

physicians.  Nor did SAP America violate the FMLA by terminating Ms. Kelly.  Ms. Kelly

admits that the sole basis of her termination was submission of the inappropriate e-mails to Mr.

Kemna, the CEO, which she claims were "sent while still becoming adjusted to new medications

while on her approved leave."  *See* 2d Am. Compl. ¶54.  In any event, the FMLA simply does

not afford employees with immunity from disciplinary action for misconduct while on FMLA

leave. *Cooper*, 6 F. Supp.2d at 114; *cf.* 29 U.S.C. § 2614(a)(3)(B).

Accordingly, Ms. Kelly fails to allege sufficient facts to state a claim that SAP America

violated the FMLA.  As a result, the Court should dismiss Count A with prejudice.

**C.**     **Ms. Kelly's ADA Claim (Count B) Is Time-Barred.**

In paragraphs 20-32 of the Second Amended Complaint, Ms. Kelly alleges disability

discrimination against SAP America under the Americans With Disabilities Act, 42 U.S.C. §§

12101 *et seq.* ("ADA").  This claim is time-barred.

The ADA, like Title VII, provides a complainant with 90 days after receipt of a notice of

right to sue to file an individual civil action in federal district court.  *See* 42 U.S.C. § 12117(a)

and *Churchill v. Star Enters.*, 183 F.3d 184, 190 (3d Cir. 1999); *see also* 42 U.S.C. § 2000e-

5(f)(1).  Thus, any complaint filed after 90 days have elapsed, even if by a matter of days, is

untimely and subject to dismissal.  *E.g., Mosel v. Hills Dep't Store, Inc.*, 789 F.2d 251, 253 (3d

6

Cir. 1986) (affirming dismissal of complaint filed 91 days after plaintiff received notice of right
to sue).

Because the 90-day limitations period is a statute of limitations, rather than a
jurisdictional requirement, however, it is subject to equitable tolling. *Irwin v. Dep't of Veterans
Affairs*, 498 U.S. 89, 94-95 (1990); *Mosel*, 789 F.2d at 253. In fact, courts within the Third
Circuit have held that the filing of an IFP Motion tolls the 90-day limitations period while that
Motion is pending. *E.g.*, *Scary v. Philadelphia Gas Works*, 202 F.R.D. 148, 152-53 (E.D. Pa.
2001); *Woods v. Bentsen*, 889 F. Supp. 179, 185 (E.D. Pa. 1995); *Pino v. Wyeth-Ayerst/AHPC*,
Nos. 95-3180, 95-4008, 1995 WL 708551, at *3 (E.D. Pa. Nov. 29, 1995); *Richardson v.
Diagnostic Rehabilitation Ctr.*, 836 F. Supp. 252, 254 (E.D. Pa. 1993). Once the IFP Motion is
ruled upon, however, the limitations period resumes running, with whatever time remains from
the initial filing.

For example, in *Pino*, 1995 WL 708551, the court faced a situation essentially identical
to that present in this case. *Id.* at *2-3. The plaintiff filed an IFP Motion 86 days after he
received his notice of right to sue. *Id.* Approximately two weeks later, the court denied the IFP
Motion, thus restarting the limitations period. *Id.* Despite having only four days left in the
limitations period in which to file a complaint, the plaintiff did not do so until 17 days after the
court denied the IFP Motion, or 13 days after the 90-day filing period had ended. *Id.*
Accordingly, the court dismissed the action as untimely. *Id.*

Here, the Right to Sue Notice Ms. Kelly received is dated March 7, 2002. *See* Ex. C.

When it is unclear when the plaintiff actually received the Notice,[4/] courts presume that the

plaintiff received the Notice no later than three business days after its mailing. *See Seitzinger v.*

*Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 239 (3d Cir. 1999) (when date of receipt of notice of

right to sue is unknown or in dispute, pursuant to Fed. R. Civ. P. 6(e), court should presume

notice received three days after mailing); *Mosel*, 789 F.2d at 252, n.2 (3d Cir. 1986) (same).

Accordingly, this Court must presume that the 90-day limitations period commenced no later

than March 12, 2002.

On May 17, 2002, which was the 67th day of the limitations period, Ms. Kelly filed her

IFP Motion. *See* Ex. D. The Court denied Ms. Kelly's Motion effective May 30, 2002. *Id.* The

90-day limitations period governing Ms. Kelly's claim was tolled during the pendency of her IFP

Motion (*i.e.*, from May 7 to 30, 2002); however, the limitations period resumed running upon

the dismissal of that Motion. *See, e.g., Pino*, 1995 WL 708551, at *2. Therefore, the 90-day

limitations period began to run again on May 31, 2002. This was the 68th day. Thus, the last day

to file a timely complaint (the 90th day) was June 24, 2002.

As the case's Civil Docket reflects, Ms. Kelly did not file her Complaint until July 15,

2002 – twenty (20) days too late. Accordingly, Ms. Kelly's ADA claim is untimely.

Despite the clear date of filing set forth in the official docket, Ms. Kelly now claims that

she actually filed her Complaint on May 13, 2002. 2d Am. Compl. ¶15. This contention is

groundless and a patent attempt to avoid the obvious untimeliness of her ADA claim. First, Ms.

---

4/    Ms. Kelly claims that a letter dated February 25, 2001 accompanied the Notice, and that
      she actually received the Notice on March 7, 2001. 2d. Am. Compl. ¶15. These dates do
      not appear to be accurate, as SAP America still employed Ms. Kelly on March 7, 2001.
      Moreover, the Notice attached to her Second Amended Complaint as Exhibit 1 is dated
      March 7, 2002.

Kelly has never before claimed that she filed her Complaint on May 13, 2002. *See* First Am.

Compl. (Ex. A).[5] She now attaches a copy of her initial Complaint with a fax line on that is

purportedly dated "May 13 02," without any indication that the fax number indicated even

belongs to the Clerk's office. *See* Ex. 3 to 2d Am. Compl. Second, even if the Complaint was

faxed to the Clerk's office on that date, however, that date is irrelevant to the statute of

limitations. What matters is the date that Ms. Kelly actually *filed* her Complaint, as reflected on

the Court's docket.

In short, therefore, even taking into account equitable tolling during the pendency of her

IFP Motion, Ms. Kelly filed her Complaint at least 20 days[6] after the expiration of the 90-day

period. Therefore, her ADA claim is untimely and in this Court should dismiss it.

**D.      Ms. Kelly's "Wrongful Discharge – Violation of Whistleblower St" (sic) Claim
           (Count C) Fails To State A Valid Claim For Relief.**

In paragraphs 42-47 her Second Amended Complaint, Ms. Kelly claims that SAP

America violated the Pennsylvania Whistleblower Law, 43 P.S. §§1421 *et seq.* ("Whistleblower

Law") when it terminated her. This claim is wholly invalid.

As a preliminary matter, the Whistleblower Law does not apply here. The

Whistleblower Law expressly covers only employees of a "public body," which is generally

defined as a state entity or other body that is funded by or through the Commonwealth. 43 P.S.

§§ 1422; *see also Clark v. Modern Group Ltd.*, 9 F.3d 321, 332 (3d Cir. 1993); *Johnson v.*

---

[5]    Indeed, Ms. Kelly's First Amended Compl. states yet another purported filing date,
       indicating on the first page: "FILED 5/29/02." Clearly, the only reliable filing date is that
       which is recorded in the Court's official civil docket.

[6]    Assuming that Ms. Kelly's reference to 3/7/01 as the date of actual receipt of the Notice
       is meant to refer to March 7, 2002, there is no need to apply the three-day presumption
       for mailing. *See* 2d Am. Compl. ¶14. In that event, she actually filed her ADA claim 23
       days too late.

9

*Resources for Human Dev., Inc.*, 843 F. Supp. 974, 980 (E.D. Pa. 1994) (Joyner, J.).   In a plain

attempt to escape the arguments Defendants made in their initial Motion to Dismiss, Ms. Kelly

has now apparently[7] inserted a new allegation that SAP America is a "public entity" pursuant to

*Denton v. Silver Stream Nursing Rehabilitation Ctr.*, 739 A.2d 571 (Super. Ct. 1999). 2d Am.

Compl. ¶ 43.

   In *Denton*, the Superior Court of Pennsylvania held that a nursing care facility that

received Medicaid funding through the Commonwealth of Pennsylvania was a "public body"

subject to the Whistleblower Law.  739 A.2d at 576.   There are no cases that have expanded the

holding of *Denton*.   In contrast, there are many cases holding that a private employer is not

subject to the Whistleblower Law.  *E.g., Cohen v. Salick Health Care, Inc.*,  772 F. Supp. 1521,

1527-28 (E.D.Pa. 1991); *Gallant v. BOC Group, Inc.*, 886 F.Supp. 202, 209 (D. Mass. 1995).

   Here, aside from her own conclusory allegation that *Denton* applies, Ms. Kelly has not

alleged or even hinted at how SAP America has received funding by or through the

Commonwealth of Pennsylvania.   In fact, Ms. Kelly's reference to herself as a "stockholder of

this company" indicates that SAP America falls squarely in the category of private employers.

*See* Am. Compl., last unnumbered paragraph (Ex. A).   Indeed, SAP America is a global leader in

the design, production, marketing and servicing of software programs for e-business platforms,

and is traded on the New York Stock Exchange.  *See* Ex. 30 to 2d Am. Compl.

   Regardless, even if the Whistleblower Law applied (which it clearly does not), any such

claim is time-barred.   Claims under the Whistleblower Law must be filed within 180 days of the

alleged adverse action.  43 P.S. §1424.  This 180-day time limit is mandatory; courts have no

---

[7]     Ms. Kelly did not even include "SAP America" in her boilerplate allegation, instead
referring to an entity called "Genesis."

discretion to extend it. *O'Rourke v. Pennsylvania Dept. of Corrections*, 730 A.2d 1039, 1042 (Cmwlth. 1999). The 180th day after Ms. Kelly's March 23, 2001 termination was August 19, 2001. However, Ms. Kelly did not file her Complaint until July 15, 2002. *See* Ex. D. Accordingly, Ms. Kelly clearly cannot state a claim for whistleblowing under the Whistleblower Law, and Count C should be dismissed in its entirety.

**E.     Ms. Kelly's "Wrongful Discharge – Breach Of Implied Contract" Claim (Count D) Fails As A Matter Of Law.**

In Count D, Ms. Kelly alleges that SAP America's "Employee Guide to Business Conduct"[8] ("Guide"), which contains a "progressive discipline policy," rises to the level of an enforceable implied contract, which her termination somehow breached. 2d Am. Comp. ¶¶ 48-50. Specifically, she claims that the Guide "said no termination without good cause" and that the asserted basis for her discharge (sending insubordinate e-mails to Mr. Kemna) does not amount to "good cause." *Id.* ¶¶ 51, 54-57. Ms. Kelly fails on several different levels.

First and foremost, nowhere does the Guide (either her "version" or the official SAP America version) state "no termination without good cause." This appears to be a complete fabrication. *See* Ex. 4 to 2d Am. Compl; *see also* Ex. E. Second, the Guide does not contain a 'progressive discipline policy," as Ms. Kelly alleges. To the contrary, the Guide expressly provides (in both "versions") that the occurrence of a non-exhaustive list of violations "may result in immediate dismissal without warning," and that "all employees remain employed at

---

[8]     Ms. Kelly appears to be referring to the "HR Guide to Business Conduct" which is a section of the HR Manual of SAP America. *See* Ex. 4 attached to the 2d Am. Compl. (incorrectly cited as Exhibit 6 in the Second Amended Complaint, ¶ 48). However, she conveniently omits the entire Guide, which contains express at-will language in its Introduction. *See infra* main text.

will." *See* Ex. 4 to 2d Am. Compl at 4-5; *see also* Ex. E. This is yet another factual invention by Ms. Kelly in an attempt to make a claim where there simply is none.

Nonetheless, even if Ms. Kelly's allegations were true, her implied contract claim still fails as a matter of law. In Pennsylvania, there is a strong presumption that employment is at-will and terminable by either party for any reason or no reason absent a statutory or contractual provision to the contrary. *Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 658 (3d Cir. 1990); 843 F. Supp. at 978; *Shick v. Shirey*, 716 A.2d 1231, 1233 (Pa. 1998); *Geary v. United States Steel Corp.*, 319 A.2d 174, 75-76 (Pa. 1974); *Nix v. Temple Univ.*, 596 A.2d 1132, 1135 (Pa. Super. 1991). "The burden of overcoming the presumption and proving that one is not employed at-will 'rests squarely' with the employee." *Luteran v. Loral Fairchild Corp.*, 688 A.2d 211, 214 (Pa. Super.) (quoting *Rutherfoord v. Presbyterian-University Hosp.*, 612 A.2d 500 (Pa. Super. 1992)), *appeal denied*, 701 A.2d 578 (Pa. 1997); *see also DiBonaventura v. Consolidated Rail Corp.*, 539 A.2d 865, 867 (Pa. Super. 1988) ("The burden of proof here is very great."). In Pennsylvania, an employee handbook or policy can form the basis for an implied contract only when if it contains "a clear indication that the employer intended to overcome the at-will presumption." *Luteran*, 688 A.2d at 214-15; *see also Mercante v. Preston Trucking Co.*, No. 96-5904, 1997 WL 288614, at *2 (E.D. Pa. May 21, 1997); *Jacques v. Akzo Int'l Salt, Inc.*, 619 A.2d 748, 753 (Pa. Super. 1993).

This case is almost identical to *Mercante*, 1997 WL 288614, in which the Court granted the employer's motion to dismiss a breach of implied contract claim. *Id.* at *3. In that case, the employer terminated the plaintiff for refusing to move his car into the Company's designated area for employee parking. *Id.* at *1 The plaintiff filed suit, alleging, *inter alia*, that his termination violated an implied contract created by the Company's employee handbook that

12

altered his status as an at-will employee. *Id.* at *2. Attaching a copy of the handbook to his complaint, the plaintiff pointed to language that described a progressive discipline policy as proof that he could only be terminated as a "last resort." *Id.*

In rejecting the plaintiff's argument, and granting the Company's motion to dismiss, the court explained:

> Even when entertaining a motion to dismiss, mere allegations of the existence of a policy or the failure of an employer to adhere to a policy is not sufficient to overcome the burden of production on plaintiff to show that a contractual employment relationship was formed.

*Id.* The court specifically noted that the plaintiff had failed to allege that the Company had provided the handbook as part of a binding offer of employment. *Id.* at *3. The Court further noted that the plaintiff had failed to identify "unequivocal provisions" in the handbook that indicated the Company's intent to renounce the at-will employment relationship. *Id. See also Rembert v. Allstate Ins. Co.*, No. 00-848, 2000 WL 1717245, at *1 (E.D. Pa. Nov. 15, 2000) (granting motion to dismiss breach of implied contract claim based upon insufficient allegations that employer intended to renounce at-will employment relationship); *Raines v. Haverford College*, 849 F. Supp. 1009, 1012 (E.D. Pa. 1994) (Joyner, J.) (same); *Anderson v. Haverford College*, 851 F. Supp. 179, 181-82 (E.D. Pa. 1994) (Joyner, J.) (same); *Luteran*, 688 A.2d at 216 (affirming trial court's grant of nonsuit on implied contract claim based on employee handbook); *Jacques*, 619 A.2d at 753 (granting summary judgment on implied contract claim based on employee handbook).

Here, Ms. Kelly, like the plaintiff in *Mercante*, hinges her implied contract claim on the alleged presence of a progressive discipline policy. Not only is there no progressive discipline policy; Ms. Kelly has not pointed to *any* verifiable language in the Guide that somehow altered

13

her at-will status. Put simply, the Second Amended Complaint contains no allegations that SAP America provided the Code as part of a binding offer of employment or that it intended to alter the at-will employment relationship with Ms. Kelly. In fact, the express language of the Guide states just the opposite:

> This manual **does not create an implied or express contract or agreement between SAP and any employee.** . . . Employment with SAP is 'at will,' which means it is terminable at will at any time either by you or SAP.

See Ex. E at 3 (emphasis added).

This language clearly indicates that the Guide does not alter employees' at-will status. Accordingly, this Court should dismiss Ms. Kelly's implied contract claim with prejudice. *See Raines*, 849 F. Supp. at 1012 (reviewing employee handbook attached to defendant's motion to dismiss and accordingly dismissing plaintiff's implied contract claim based on express statement that handbook "is not a contract of employment"); *Anderson*, 851 F. Supp. at 181-82 (same).

**F.     Ms. Kelly's "Wrongful Discharge – Breach of Covenant of Good Faith And Fair Dealing" Claim (Count E) Fails As A Matter Of Law.**

In Count E, Ms. Kelly alleges SAP America breached a covenant of good faith and fair dealing when it terminated her because, "[g]iven the years of service, the circumstances surrounding my termination, there was nothing good or fair about it." 2d Am. Compl. ¶ 62. This claim is invalid as a matter of law.

It is well settled that a plaintiff "cannot as a matter of law maintain an action for breach of the implied duty of good faith and fair dealing, insofar as the underlying claim is for termination of an at-will employment relationship." *Donahue v. Federal Expr.*, 753 A.2d 238, 243 (Pa. Super. 2000); *see also Herbst v. General Accident Ins. Co.*, No. CIV. A. 97-8085, 1999 WL 820194, at *10 (E.D. Pa. Sept. 30, 1999) ("Pennsylvania law does not recognize a claim for

14

breach of a duty of good faith and fair dealing arising from the termination of an at-will

employment relationship"); *Vaughan v. Pathmark Stores, Inc.*, No. 99-0018, 1999 WL 299576,

at *2 (E.D. Pa. May 10, 1999) (dismissing claim for breach of an implied covenant of good faith

and fair dealing where employment was at-will). As set forth *supra* Section III.E., Ms. Kelly is

an at-will employee. Therefore, Ms. Kelly cannot maintain a claim for breach of implied duty

of good faith and fair dealing under Pennsylvania. As a result, Count E is invalid and the Court

should dismiss it with prejudice.

### G.   Ms. Kelly's Gross Negligence Claim (Count F) Against SAP America And CIGNA Fails As A Matter Of Law.

In Count F, having withdrawn her initial claims under COBRA and HIPAA, Ms. Kelly

now claims that both SAP America and CIGNA Healthcare engaged in "gross negligence" when

her health insurance was allegedly cancelled. 2d Am. Compl. ¶¶ 65-70. This claim is frivolous.

The Pennsylvania Workers' Compensation Act ("PWCA") bars a gross negligence claim

against Ms. Kelly's employer, SAP America. The PWCA "is the exclusive means for obtaining

compensation for injuries which has been substituted for common law tort actions between

employees and employers." *Shick*, 716 A.2d at 1237; *see also Chisholm v. Nat'l Corp. for Hous.

Partnerships*, No. Civ. A. 99-3602, 2000 WL 307245, at * 3 (E.D. Pa. Mar. 22, 2000) (the

PWCA "functions as a complete bar to state law tort claims in the employment context").

Ms. Kelly's gross negligence claim against CIGNA is similarly invalid. In her Second

Amended Complaint, she has not even alleged the bare elements of a negligence claim. To state

a negligence claim in Pennsylvania, a plaintiff bears the burden of demonstrating:

> there was a duty or obligation recognized by law, breach of that
> duty by the defendant, a causal connection between the defendant's
> breach of that duty and the resulting injury, and actual loss or
> damage suffered by the complainant.

15

*Herczeg v. Hampton Township Mun'l Auth.*, 766 A.2d 866, 871 (Pa. Super. 2001) (citing *First v. Zem Zem Temple*, 686 A.2d 18, 21 (Pa. Super. 1996), *appeal denied*, 700 A.2d 441 (Pa. 1997)), *appeal denied*, 788 A.2d 376.

Ms. Kelly fails to allege sufficient facts to demonstrate – or even to identify – any duty owed by CIGNA to her.  In the absence of any duty, Ms. Kelly's allegations that CIGNA cancelled her health insurance and that she and her spouse suffered hardships cannot save her gross negligence claim. 2d Am. Compl. ¶¶ 67-69.  Accordingly, Count F should be dismissed with prejudice against CIGNA for failure to state a claim upon which relief may be granted.

**H.    Ms. Kelly's Defamation Claim (Count G) Is Time-Barred.**

In Count G, Ms. Kelly alleges that Mr. Kleinman's letter dated March 23, 2001 notifying her of her termination of employment and SAP America's Action Form relating to her termination were defamatory.  2d Am. Compl. ¶¶ 71, 74.  This claim is invalid.

Under Pennsylvania law, any action for defamation must be filed within one year.  42 P.S. § 5523(1); *Spain v. Vicente*, 461 A.2d 833, 837 (Pa. Super. 1983).  The statute of limitations begins to run upon the publication of the defamatory statement. *See id.*; *Abernethy v. Williams*, 584 A.2d 1085, 1086-87 (Pa. Cmwlth. 1990), *appeal denied*, 602 A.2d 861 (Pa. 1992); *Andrews v. Time, Inc.*, 690 F. Supp. 362, 364 (E.D. Pa. 1988); *Merv Swing Agency, Inc. v. Graham Co.*, 579 F. Supp. 429, 430 (E.D. Pa. 1983).

The allegedly defamatory termination letter was sent to Ms. Kelly on March 23, 2001. *See* Ex. 20 to 2d Am. Compl. (incorrectly cited as Ex. 27).  Therefore, the latest date that Ms. Kelly could file a defamation claim based on this letter was March 23, 2002.  Similarly, the Action Form is dated March 26, 2001, so the latest date that Ms. Kelly could file a defamation claim based on this form was March 26, 2002. *See* Ex. 28 to 2d Am. Compl.  However, Ms.

16

Kelly did not file the instant lawsuit until July 15, 2002, more than three months after March of 2002. Accordingly, Ms. Kelly's defamation claim – whether based on the termination letter or the Action Form – is clearly time-barred.  As a result, this Court should dismiss Count G with prejudice.

## IV.   CONCLUSION

For all of the foregoing reasons, Counts A through G in Ms. Kelly's Second Amended Complaint fail as a matter of law.  Accordingly, this Court should grant Defendants' Motion and issue an order dismissing Ms. Kelly's Second Amended Complaint in its entirety with prejudice.

Respectfully submitted,

James N. Boudreau (Id. No. 77891)
Tamsin J. Newman (Id. No. 81001)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA  19103

Attorneys for Defendants SAP America, Inc. and CIGNA Healthcare

Dated: November 6, 2002

17

## CERTIFICATE OF SERVICE

I, Tamsin J. Newman, hereby certify that a true and correct copy of the foregoing

Motion Of Defendants SAP America, Inc. And CIGNA Healthcare To Dismiss All Counts

(Counts A – G) Of Plaintiff's Second Amended Complaint Filed October 11, 2002, and

memorandum of law in support thereof, was served by first class mail this 6th day of November,

2002, upon the following:

> Ms. Denise Kelly
> 15 North Elm Avenue
> Newtown, PA 18940

TAMSIN J. NEWMAN