IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DENISE KELLY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SAP AMERICA, INC.,<br><br>　　　　Defendant. | Civil Action No. 02-CV-2955 |

## TRIAL MEMORANDUM OF DEFENDANT SAP AMERICA, INC.

Pursuant to the Court's February 26, 2003 Scheduling Order, Defendant SAP America, Inc. ("Defendant" or "SAP America"), by and through its attorneys, hereby submits the following Trial Memorandum summarizing the legal issues associated with Plaintiff Denise Kelly's ("Ms. Kelly") claims.

### I.    INTRODUCTION

On March 20, 2001, Ms. Kelly sent an e-mail to the CEO of her employer, SAP America, comparing SAP America employees to used condoms and dead soldiers. As a result of Ms. Kelly's inappropriate conduct, SAP America terminated her employment effective March 23, 2001. Ms. Kelly subsequently filed this lawsuit, claiming that SAP America violated the Family and Medical Leave Act, 29 U.S.C. §§ 2601 et seq. ("FMLA"). On October 22, 2002, not long after filing her initial complaint, Ms. Kelly filed a second amended complaint (hereafter "Second Amended Complaint") in which she asserted various new theories of liability. By Order dated January 28, 2003, and in response to SAP America's Motion to Dismiss, this Court dismissed all of Ms. Kelly's claims, with the exception of her FMLA claim.

At trial, the overwhelming evidence in SAP America's favor will demonstrate that Ms. Kelly cannot prevail on her FMLA claim. The evidence will show that SAP America terminated Ms. Kelly's employment because she sent an extremely inappropriate e-mail to SAP America's CEO, which SAP America deemed to be insubordinate, disrespectful and in violation of Company policy. Ms. Kelly will be unable to point to any evidence that her employment termination was due to anything else.

## II.   STATEMENT OF THE CASE[1/]

On June 30, 1997, SAP America hired Ms. Kelly as a Lead Financial Administrator. In 2000, Ms. Kelly assumed the position of Financial Analyst. In February 2001, Ms. Kelly requested, and SAP America granted, a leave of absence due to her medical condition (depression) pursuant to the FMLA. While on leave, Ms. Kelly kept her Company laptop computer at her home where she continued to have access to SAP America's e-mail system.

On February 26, 2001, shortly after Ms. Kelly began her leave of absence, Wolfgang Kemna, SAP America's CEO, sent an e-mail to all SAP America employees asking them to respond to an online Company survey called the Q12 Survey. The Q12 Survey is an on-line questionnaire, which was designed to measure employee engagement and solicit employee input in various areas, such as SAP America's mission, direction, compensation, organizational structure, career growth and training, and performance evaluation. The Q12 Survey consisted of

---

1/   As reflected in the stipulation of uncontested facts in the Joint Pretrial Memorandum submitted by the parties, SAP America and Ms. Kelly are in agreement with respect to substantially all of the facts set forth below.

a series of statements, with which employees agree or disagree by choosing one of six possible responses; it did not allow employees to write comments or personal opinions.

Ms. Kelly received Mr. Kemna's e-mail about the Q12 Survey at home while on leave. On March 15, 2001, Mr. Kemna sent a reminder e-mail to all SAP employees to complete the on-line survey. Mr. Kemna did not direct this e-mail specifically to Ms. Kelly, nor did he solicit any response from her other than completing the on-line survey. Ms. Kelly received this e-mail as well. Mr. Kemna's March 15, 2001 e-mail indicated that the on-line survey "would be live until Sunday, March 18." On March 20, 2001, when Ms. Kelly was unable to access the on-line survey, she responded directly to Mr. Kemna by sending him an e-mail. This e-mail contained the subject heading, "an employee is nothing more than a used condom," and the text stated: "They are great when they work but what a bitch when they break. . . . This company keeps a soldier in combat until their [sic] dead."

When Mr. Kemna received this e-mail, he forwarded it to Lawrence Kleinman, Senior V.P., Human Resources, who received it the following day. In response, Mr. Kleinman told Mr. Kemna that Ms. Kelly's conduct was unacceptable and that Human Resources would handle the matter. Later that same day, Ms. Kelly sent Mr. Kemna a second e-mail in which she admitted to sending the first e-mail and attempted to explain her misconduct.

SAP America decided that Ms. Kelly's conduct was grounds for immediate termination. Her behavior was in violation of Company policy, insubordinate and extremely disrespectful to Mr. Kemna, as well as SAP America. SAP America has zero tolerance for inappropriate conduct and prohibits the use of its communications technology, including its e-mail system, for the transmission of any communications, which are inappropriate or derogatory. For example, SAP America's "Inappropriate Conduct" policy states in relevant part that SAP

America "has zero tolerance for conduct that is inappropriate." Moreover, the "Communications Technology" policy states that electronic media may not be used for transmitting, retrieving, or storing any communications that are derogatory to any individual or group, or any communications of a defamatory or threatening nature. The evidence will show that Ms. Kelly had access to these policies via the Company's intranet and had in fact downloaded these policies from the intranet in February 2001.

On March 22, 2001, Mr. Kleinman and Cindy Aigeltinger, Director of Human Resources, called Ms. Kelly to notify her of her employment termination. As soon as Mr. Kleinman and Ms. Aigeltinger mentioned Ms. Kelly's March 20, 2001 e-mail, Ms. Kelly admitted to writing the e-mail, became extremely upset, and began crying. She told Mr. Kleinman and Ms. Aigeltinger that she was unable to return to work at that time due to depression. Because Ms. Kelly was unable to continue the conversation in a calm manner, Mr. Kleinman ended the telephone conversation without telling her of her employment termination. Instead, Mr. Kleinman chose to tell Ms. Kelly of her termination by letter dated March 23, 2001 Mr. Kleinman told Ms. Kelly that the sole reason for her termination was the fact that she wrote and submitted the inappropriate March 20, 2001 e-mail to Mr. Kemna.

### III.   LEGAL ISSUES LIKELY TO ARISE AT TRIAL

**A.   Ms. Kelly Will Be Unable To Show That She Was Entitled To Be Restored To Her Position (Or An Equivalent Position) At SAP America.**

Ms. Kelly alleges that SAP America violated the FMLA by refusing to restore her to her position (or an equivalent position) upon her return from medical leave. At trial, the evidence will show that Ms. Kelly was not entitled to job restoration because her employment was terminated.

Section 2614(a) of the FMLA provides that after a period of qualified leave, an employee is entitled to reinstatement to her former position or an equivalent one with the same benefits and terms. 29 U.S.C. § 2614(a)(1). The FMLA expressly states, however, that it does not afford any employee "any right, benefit or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken leave." 29 U.S.C. § 2614(a)(3). Thus, if an employee's employment is terminated during the course of taking FMLA leave, "the employer's responsibility to . . . restore the employee cease[s] at the time the employee is laid off." 29 C.F.R. § 825.216(a)(1).

Notably, the FMLA expressly does not limit an employer's ability to discipline or terminate an employee for misconduct while on FMLA leave. For example, in Holmes v. Pizza Hut of America, Inc., Civ. A. No. 87-4967, 1998 WL 564433 (E.D. Pa. Aug. 31, 1998), the plaintiff-employee took FMLA leave because of stress related anxiety. While on leave, the defendant-employer discovered that the plaintiff, a manager in one of defendant's restaurants, had misappropriated money, violated cash control procedures, and violated company policy by failing to deposit funds in a timely fashion. Id. at *1. Due to this misconduct, the defendant terminated the plaintiff's employment while she was still on FMLA leave. In granting summary judgment in the defendant's favor, the court reasoned that the plaintiff was not otherwise entitled to be reinstated to her position as Manager. The undisputed evidence showed that the employer would have terminated the plaintiff's employment because of her violations of company policy regardless of whether she had taken FMLA leave. Id. at *7.

At trial, the evidence will show that like the plaintiff in Holmes, Ms. Kelly was not otherwise entitled to be reinstated to her position as Financial Analyst, or any other position at SAP America. SAP America terminated Ms. Kelly's employment because she sent an extremely

5

inappropriate e-mail to SAP America's CEO which compared SAP America employees to used condoms and dead soldiers. The evidence will demonstrate that SAP America would have terminated Ms. Kelly's employment for writing and sending the inappropriate March 20, 2001 e-mail regardless of whether she had taken FMLA leave. Once SAP America determined that Ms. Kelly's misconduct warranted termination, Ms. Kelly was no longer entitled to her position. See 29 U.S.C. § 2614(a)(3); 29 C.F.R. § 825.216(a)(1). Accordingly, Ms. Kelly's claim that SAP America violated the FMLA by "refusing" to restore her to her position fails.

Further undermining Ms. Kelly's claim is the fact that she admits that she was unable to return to work as of the date of her termination (March 23, 2001). Ms. Kelly concluded with her doctor that she could not return to work until October 2001. FMLA regulation §825.214(b) provides that if an employee is "unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition, the employee has no right to restoration to another position. . . . " 29 C.F.R. §825.214; see also Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 384 (3d Cir. 2002) (citing 29 C.F.R. § 825.214(b)) ("To succeed on his FMLA claim, [the employee] had to establish not only that he was not returned to an equivalent position but also that he was able to perform the essential functions of that position."). Accordingly, even if SAP America had not terminated Ms. Kelly's employment, it would not have had any obligation to restore her to her position because she was unable to return to work due to her mental condition.

B.   **SAP America Did Not Discriminate Or Retaliate Against Ms. Kelly For Taking FMLA Leave.**

Although Ms. Kelly does not expressly claim that SAP America discriminated or retaliated against her by terminating her employment, to the extent that her FMLA claim purports to encompass such allegations, Ms. Kelly will be unable to point to any evidence at trial

6

support such allegations.

Section 2615(a)(2) makes it unlawful "for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]." 29 U.S.C. § 2615(a). To establish a prima facie case of retaliatory discharge under the FMLA, a plaintiff must show that she engaged in FMLA protected activity, that the employer took subsequent adverse action, and a causal connection between the protected activity and the employer's action. See Baltuskonis v. US Airways, Inc., 60 F.Supp.2d 445 (E.D. Pa. 1999) (Joyner, J.).

If the plaintiff establishes a prima facie case, then the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse action. Id. at *448 Once the employer has articulated such a reason, the burden shifts back to the employee to prove that the employer's reason is not the true reason for the adverse action but rather a pretext for discrimination. The ultimate burden of persuasion remains with the plaintiff at all times. Id.

A plaintiff does not satisfy her burden of persuasion by simply disagreeing with the employer's decision to terminate; rather, the plaintiff must produce evidence that the reasons for the termination are pretextual. See Cohen v. Pitcairn Trust Co., Civ. A. No. 99-5441, 2001 WL 873050 (E.D. Pa. June 20, 2001). The fact that an employee is terminated while on FMLA leave, by itself, is not sufficient to raise an inference of pretext. Dillon v. Carton, 977 F. Supp. 1155 (M.D. Fla. 1997)("The FMLA is not a shield to protect employees from legitimate disciplinary action by their employers if their performance is lacking in some manner unrelated to their FMLA leave.")(quoting McCown v. UOP, Inc. 1995 WL 519818 (N.D. Ill. Aug. 30, 1995)).

It is undisputed that SAP America terminated Ms. Kelly's employment because she

7

admittedly wrote and sent the March 20, 2001 e-mail in which she compared SAP America employees to used condoms and dead soldiers. At trial, Ms. Kelly will not produce any evidence to show that this legitimate reason for the termination of her employment was a pretext for discrimination or retaliation. The evidence will show that SAP America would have terminated Ms. Kelly's employment based on her inappropriate conduct regardless of whether she was on FMLA leave at the time.

### C. Ms. Kelly Is Not Entitled To Punitive Damages.

To the extent that Ms. Kelly seeks punitive damages, she is not entitled to them. Punitive damages are not available under the FMLA. See 29 U.S.C. §2617(a)(1)(A); Koontz v. USX Corp., No. 99-3191, 2001 WL 752656, at *10 (E.D. Pa. July 2, 2001) (dismissing plaintiff's request for punitive damages under FMLA). Therefore, the Court should not submit the issue of punitive damages to the jury as a matter of law.

### IV. CONCLUSION

For all of the foregoing reasons, SAP America respectfully submits that the Court, after hearing all of the evidence, will deem it appropriate to enter judgment in SAP America's favor and dismiss Ms. Kelly's Second Amended Complaint with prejudice.

Respectfully submitted,

*/s/ signature*
James N. Boudreau (PA ID 77891)
Tamsin J. Newman (PA ID 81001)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
215 963-5106/5201

Dated: September 2, 2003

Attorneys for Defendant SAP America, Inc.